C. B. STEWART et al., Appellants, v. J. W. COSHOW et al.

Division One, December 23, 1911.

1. **PLEADING: Conclusions of Law: Heirs at Law and Next of Kin.** An allegation in the petition in a will contest that plaintiffs are "heirs at law" of the testator is a legal conclusion, but that they are "next of kin" to him is not. Both together are such a statement of an issuable fact as is not vulnerable to attack by a general demurrer.

2. **WILL: Creating Public Cemetery or Private Burying Ground.** The testator's will said that his purpose was to so dispose of his estate "as will most benefit my large circle of relatives and friends," and then gave his real and personal estate to certain trustees, who were to "set apart such of my real estate as in their judgment may be necessary, including the old family burial ground where my father and mother and many of their descendants and relatives are buried, for cemetery purposes . . . and to use the net income, rents and profits arising from my said estate for the purpose of improving, decorating, adorning and enlarging said cemetery grounds," and then recited that "in making this disposition of my property I believe I put it to better use than to have it distributed in small parcels to my heirs at law." *Held*, that the will did not contemplate only the private burying ground in which his father and mother and their many descendants and relatives were buried, which he did not own, but contemplated such other parts of his "real estate" as was needed for the establishment of a cemetery in which to bury his "large circle of relatives and friends," and therefore a public cemetery.

3. ――――: ――――: **Codicil.** Nor did the fact that the testator in the will directed the trustees to form themselves into a corporation, and in the codicil revoked that requirement, make the cemetery created by the will any the less a public cemetery.

4. ――――: ――――: **Corporation.** It is not necessary under the laws of this State for the establishment of a public cemetery that a corporation be formed to hold title and manage it (Secs. 1302, 1310, 1311, R. S. 1909), although that course is expressly authorized by statute (Sec. 3435, R. S. 1909).

5. ――――: **Devise of Land for Public Cemetery: Perpetuity.** The rule against perpetuities is designed to forbid the creation of a future estate that will not vest within the lifetime of a person in being and twenty-one years and ten months there-

after. A will which vests real estate in trustees for the establishment of a public cemetery, to take effect immediately on the testator's death, does not establish a perpetuity, although it invests the estate in them and their successors in trust forever.

6. ——: ——: **Statute: Dedication: Condemnation.** Besides, the statute (Sec. 1303, R. S. 1909) expressly authorizes the dedication of land to the purpose of a public cemetery, and even the condemnation of land for the enlargement of a cemetery (Sec. 1310).

7. ——: ——: **Public Charity.** A public cemetery is a public charity; and is classed as such both in the Constitution and the statutes.

Appeal from St. Charles Circuit Court—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Conran & Corley* for appellants.

(1) The will of Alonzo B. Howell creates a trust in perpetuity. The property is to be held in trust forever. Randall on Perpetuities, p. 48; Washburn on Real Prop. (6 Ed.), p. 217; Duke of Norfolk's case, 1 Vern. 164. The rule against perpetuities is firmly established as the law in Missouri, as well as in all the other States of the Union. Bank v. Longfellow, 96 Mo. App. 385; Lockridge v. Muriner, 109 Mo. 162; Johnson v. Holifield, 79 Ala. 423; 2 Perry on Trusts and Trustees (5 Ed.), sec. 687; 2 Underhill on Wills, 1195. The rule against perpetuities applies to trusts, as well as to other estates, and in the case of a private trust, or a trust for a private use, a perpetual restraint on the power of alienation renders it absolutely void. 2 Perry on Trusts and Trustees (5 Ed.), 302; 1 Perry on Trusts and Trustees (5 Ed.), sec. 95; 2 Id., sec. 732; Schumacker's Estate v. Reel, 61 Mo. 592; Pennoyer v. Wadhams, 20 Ore. 279; Chambers v. St. Louis, 29 Mo. 543. (2) Definition of public charity. "A gift to a general

public use which extends to the poor as well as to the rich.'' Jones v. Williams, Amb. 652. The definition most frequently quoted is by Mr. Justice Grey in Jackson v. Phillip, 14 Allen 556. The Statute of Uses, 43 Elizabeth C. 4, has always been looked to, in America, as furnishing a summary of what uses are to be considered charitable. Bispham's Equity, 119. It is settled that the statute of charitable uses is in force in Missouri. Chalmers v. St. Louis, 29 Mo. 543. While this statute cannot be looked to as the sole test of what is a public charity, it has been held that one of the things accomplished by it was ''It established an enumeration, or kind of definition, standard or test, to which all gifts and grants in trust could be brought in order to determine whether they were charitable.'' 2 Perry on Trusts and Trustees (6 Ed.), sec. 696; Buchanan v. Kennard, 234 Mo. 117. Many objects not therein enumerated have been declared charitable, but they must fall within the ''equity'' of the statute. Morice v. Bishop of Durham, 10 Vez. 523; Bispham's Principles of Equity, sec. 119. (3) The trust created by the will of Alonzo B. Howell, so far as it relates to the establishing of a cemetery, is not a public charity and is void; insofar as said trust relates to the improving, decorating, adorning and enlarging of said cemetery, it is not a public charity, and is void. A cemetery is not enumerated in the Statute of Uses nor is the improving, decorating, adorning or enlarging of a cemetery. Anderson v. Atcheson, 130 Iowa 744; Dwenger v. Geary, 113 Ind. 106; In re Ralsten's Estate, 1 Ches. Co. Rep. 482; Dexter v. Gardner, 7 Allen, 247; In re Vaughan, 33 Ch. D. 187. It is a charitable use because its purpose is the promotion of religion and morality. Beatty v. Kurtz, 2 Pet. 566; Mannix v. Purcell, 46 Ohio St. 130; Matter of Deanville Cemetery Assn., 66 N. Y. 569; Hopkins v. Grimshaw, 165 U. S. 342; Board of Health v. Van Hoesen, 87 Mich. 533; In re Eureka

Basin Co., 96 N. Y. 42; Gilmer v. Lime Point, 18 Cal. 229; Evergreen Cem. Assc. v. Beecher, 53 Com. 551; Hartson v. Elden, 50 N. J. Eq. 522; Donnelly v. Catholic Cem. Assc., 146 Mass. 16. (4) The whole purpose of the trust is to provide for the perpetual care, improvement, decoration, adornment and enlargement of the Howell family burial ground, a private family burial ground, which is not a legal public charity, and is void. Hornberger v. Hornberger, 12 Heisk. 633; Morse v. Natick, 176 Mass. 513; Fite v. Beasley, 12 Lea, 328; Detuilly v. Hartman, 37 N. J. Eq. 347; Pease v. Pattison, 32 Ch. D. 154; Cunnack v. Edwards, 2 Ch. 679; In re Buck, 2 Ch. 727; Lloyd v. Lloyd, 10 Eng. L. & Eq. 139. (5) The trust is so vague and indefinite in its objects and beneficiaries that it cannot be upheld as a charitable trust, and is void. Hadley v. Forsee, 203 Mo. 418; John v. Smith, 91 Fed. 827; Crerar v. Williams, 145 Ill. 625; Nichols v. Allen, 130 Mass. 211; Donohugh's Appeal, 86 Pa. St. 306; Old South Society v. Croker, 119 Mass. 1; Fay v. House, 136 Cal. 599. (6) The trust created by this will is not a statutory trust, for which property may be given in perpetual restraint of the power of alienation by reason of statutory permission. Morse v. Natick, 176 Mass. 510; Mason v. Library Assc., 237 Ill. 442; Cooley's Const. Lim. (7 Ed.), p. 95; Sedg. on Stat. & Const. Law, 313.

*C. W. Wilson* for respondents.

(1) The rule against perpetuities has no application in the case at bar. First. Because the rule relates to remoteness in the vesting of titles. No such question is present, because the title vested in the trustees immediately when the property was turned over to them under the order of the probate court and the terms of the will. Gates v. Seibert, 157 Mo. 267; Bank v. Longfellow, 96 Mo. App. 385. Second.

Because the gift is for a public charity, and the title having immediately vested in the trustees the rule against perpetuities is inapplicable. Gates v. Seibert, 157 Mo. 267; Bank v. Longfellow, 96 Mo. App. 385. (2) A gift to provide and maintain a public cemetery or a place for the burial for the dead, is a gift for a charitable use, and is plainly recognized as such by the laws of Missouri. The gift in this case, to trustees for the purpose of organizing a cemetery association for the purpose of providing and maintaining a public cemetery, such as is contemplated in our statute, and was in the mind of the testator, is a gift to a charitable use—for the establishment and maintenance of a public charity. Such institutions are plainly recognized as public charities by the laws of our State. Constitution, art. 2, sec. 8; Constitution, art. 10, sec. 6; R. S. 1909, secs. 3435, 3439; R. S. 1909, chap. 18; Tracy v. Bittle, 213 Mo. 310; Campbell v. Kansas City, 102 Mo. 339. (3) There is nothing in the contention that the trust is too vague and indefinite to be upheld. A degree of indefiniteness is a distinguishing characteristic of a charitable gift always. The object of this charity is amply definite. Chambers v. St. Louis, 29 Mo. 543; Howe v. Wilson, 91 Mo. 45; Powell v. Hatch, 100 Mo. 598.

VALLIANT, J.—This is a suit in equity, the purpose of which is to have a will decreed to be void because of a certain alleged infirmity appearing on its face. The will purports to give the chief part of testator's property, real and personal, to certain persons therein named in trust to establish and maintain a cemetery. The circuit court sustained a demurrer to the petition and, plaintiffs declining to plead further, judgment for defendants was rendered, from which plaintiffs appealed. The whole case for our consideration therefore appears on the face of the petition.

The plaintiffs, thirty-two in number, say they are the next of kin and heirs at law of the testator, Alonzo B. Howell, deceased; that they are not the only heirs at law of the testator, but there are others who are "very numerous and widely scattered," and the plaintiffs sue for themselves and the other heirs. The petition states that the testator's estate consisted of about 500 acres of land and over $7,000 in money The will is copied in the petition and is as follows:

"I, Alonzo B. Howell, of the county of St. Charles, in the State of Missouri, being now advanced in years and of an infirm state of health, and conscious of my liability to sudden death—yet at the same time of sound mind and memory, and desirous of so disposing of my estate, both real, personal and mixed as will most benefit my large circle of relatives and friends, do hereby make, ordain, publish and declare this my last will and testament, hereby revoking all former wills by me made.

"It is my will and desire to be buried in a manner suitable to my situation in life, and I leave the conduct and management of my funeral to my executors hereinafter named and appointed.

"It is my will and desire that all my just debts and the expenses of my funeral be paid by my executors as soon as conveniently may be after my demise.

"It is my will and desire that my said executors erect at my grave a monument such as in their judgment may be most suitable and becoming.

"All the rest, residue and remainder of my estate, both real, personal and mixed I give, devise and bequeath to Wm. M. Stewart, Mike Sutton, John W. Coshow, Isaac N. Howell and John Burton as trustees, and to their successors in office and trust forever, for the purpose of organizing and incorporating themselves into a cemetery association under the laws of the State of Missouri. Said trustees and their

successors to set apart such of my real estate as in their judgment may be necessary, including the old family burial ground where my father and mother and many of their descendants and relatives are buried, for cemetery purposes, and said trustees and their successors are hereby empowered to make such rules and regulations in reference to said cemetery as in their wisdom and judgment may be just and proper. And I hereby give and grant to said trustees authority and power to use the net income, rents and profits arising from my said estate for the purpose of improving, decorating, adorning and enlarging said cemetery grounds, and for all services rendered by them or any of them in their capacity as such they are to be paid out of said income, so that no part of the principal of my estate shall be encroached upon at any time, unless the same be required for such improvements. In making this disposition of my property I believe I put it to better use than to have it distributed in small parcels to my heirs at law.

"My said trustees and their successors in office are to receive annually reasonable compensation for the care and management of all funds and property in their hands as well as for the care of the cemetery.

"I hereby name and appoint Wm. M. Stewart and John W. Coshow, executors of this will.

"Witness my signature this August 29th, 1896.

"ALONZO B. HOWELL.

"Codicil.

"Whereas, I, Alonzo B. Howell, of the county of St. Charles and State of Missouri, have by my last will and testament in writing duly executed, bearing date August 29, 1896, given, bequeathed, and devised my entire estate real, personal and mixed (with the exception of reasonable amount for funeral expenses and the erection of a suitable monument at my grave). All the rest and residue of my estate to

Wm. M. Stewart, Mike Sutton, John W. Coshow, Isaac N. Howell, and John Burton as trustees, and their successors in office, in trust forever for the purpose of organizing and incorporating themselves into a cem, etery association under the laws of the State of Missouri.

"Now, I, said Alonzo B. Howell, do make this codicil to my said will, and I do hereby revoke said provisions in reference to said cemetery association as a corporation under the laws of the State of Mis-. souri, and also as to Isaac Howell as one of the trustees. And I hereby appoint Wm. M. Stewart, John W. Coshow, Mike Sutton and John Burton as trustees for the care, improvement and maintenance of said cemetery as is directed in my said will, except that they shall not be required to organize as a cemetery association under the laws of the State of Missouri, and I direct that my executor shall as soon as convenient after my decease, pay to said trustees, W. M. Stewart, Mike Sutton and John Burton for their services as said trustees, fifty dollars each, and to John Coshow five hundred dollars for his services as trustee. And I give and bequeath to George Sudbrock, who now rents my farm, for having taken care of me in infirmity and continuing the same for the rest of my life, the sum of two hundred dollars to be paid as soon as convenient after my decease.

"And I hereby direct my executor hereinafter appointed (John W. Coshow) to take care of my sis, ter, Mary E. Fisher according to his best judgment and especially to see that she shall not lack the comforts of life.

"And I do hereby appoint John W. Coshow my sole executor of this, my last will and testament, hereby revoking the appointment of Wm. M. Stewart as named in the will aforesaid.

"And I hereby further direct that my executor, John W. Coshow, shall not be required to give as

executor of this my last will and testament any bond, trusting fully to his honesty and faithfulness in said capacity.

"Witness my signature this March 25th, 1898.

"Alonzo B. Howell."

It was duly executed and attested.

The will was probated, the estate was administered, final settlement made by the executor and 'the property delivered to the trustees, Stewart, Sutton and Coshow; John Burton, named in the will as trustee, died without having qualified as such.

Appellants in their statement of the case make some allegations of facts which are not in the petition, but as we are to consider the case only as on demurrer to the petition those statements will not be noticed.

I. Respondents make the point that the petition is defective in not stating the degree of relationship the plaintiffs bore to the testator. The petition states that they are "next of kin and heirs at law" of the testator. Respondents say that is a mere legal conclusion and not an issuable fact. To say that they are heirs at law it a legal conclusion, but to say that they are next of kin is hardly a conclusion of law. To say that they are of kin is a statement of fact, but to say "next of kin" is to say of closer kin than others, which is a conclusion, the correctness of which is not apparent until we know what other kin there were and the degree of relationship. But this objection does not appear to have been made in the trial court. If defendants there had desired to have the plaintiffs make a more specific statement on that point they could have moved to require plaintiffs to make their allegation more definite and certain, or, perhaps a special demurrer would have reached the point, but in the face of a general demurrer the allegation that the plaintiffs are next of kin and heirs at law is sufficient.

II. · Plaintiffs' main point is that the trust intended to be created by the will is not a trust for a charitable use, and therefore it is invalid, because it purports to tie up the estate in perpetuity. The plaintiffs' contention contains two propositions to-wit: First they say a gift to establish and maintain a public cemetery is not a gift to a charitable use; second, that, however that may be, this is not a gift to establish and maintain a public cemetery, but a private family burying ground.

(a) We will consider the second proposition first.

The only language in the will on which plaintiffs can rely for that proposition is that which authorizes the trustees ''to set apart such of my real estate as in their judgment may be necessary, including the old family burying ground where my father and mother and many of their descendants are buried, for cemetery purposes.'' The petition states that the burying ground mentioned in the will was then and is now ''a private burying ground, and did not at any time belong to testator, and testator's trustees could not care .for or manage said burying ground without the consent of the owner thereof; and the same could not be made a part of any cemetery, without the consent of the owner.'' Of course the trustees could not take possession of the family burying ground or assume the care and maintenance of it without the consent of the owner, but that would not defeat the whole scheme. The cemetery to be established was to include the ''old family burying ground,'' but was not to consist of that alone; the use of the word ''including'' shows that the cemetery was to be something more; and for its establishment the trustees were to use such part of the testator's ''real estate as in their judgment may be necessary.'' There were 500 acres, more or less, and of that area there was to be as much included in the cemetery as the trustees saw fit, and the rest was to be used for

maintenance. The cemetery was to be established on land that belonged to the testator, and if, as the petition says, the private family burying ground was not on land that belonged to testator, it could not have been the cemetery designed in the will. In the preamble to the will the testator indicates the public character of the cemetery he seeks to establish; he says that his purpose is to so dispose of his estate, real, personal and mixed, "as will most benefit my large circle of relatives and friends." The cemetery is to be for the benefit of the large circle of his relatives and friends. The use is not restricted to the family, not to the next of kin, not even to relatives, far or near, but it goes also to the large circle of friends, and there is no specification as to who is included in the word friends. That word may be used in a narrow or broad sense, as a reference to Webster's big dictionary will show, and it is often used in a sense so broad as to include a whole community, towards whom the writer or speaker feels kindly. At the close of the bequest and devise the testator says: "In making this disposition of my property I believe I put it to better use than to have it distributed in small parcels to my heirs at law." When we reflect that there are thirty-two plaintiffs claiming to be heirs at law, and that they say in their petition there are other heirs who "are very numerous and widely scattered," we see reason in the disposition of his property made by the testator; rather than have it broken into "small parcels" and widely distributed, he thought best to keep it together and give the community in which he had lived the benefit of it in the form of a public cemetery. We are not called to pass judgment on the wisdom or justice of the disposition the testator made of his property; there being no question as to his mental capacity and freedom to act, he could dispose of his own as he saw fit, provided it be given to a lawful use.

There is no difference, as to character, between the cemetery called for in the body of the will and that called for in the codicil. In the body of the will the trustees are required to organize a corporation, but in the codicil that requirement is revoked, and also one of the persons named as trustees is omitted, but otherwise the provision for the cemetery is not altered. The language of the codicil on this point is: "And I hereby appoint Wm. M. Stewart, John W. Coshow, Mike Sutton and John Burton as trustees for the care, improvement and such maintenance of said cemetery as is directed in my said will, except that they shall not be required to organize as a cemetery association under the law of the State of Missouri." It is not necessary under the law of this State for the establishment of a public cemetery that a corporation be formed to hold the title and manage it (Secs. 1302, 1310, 1311, R. S. 1909), although that would be a convenient course, and is expressly authorized by statute (Sec. 3435, R. S. 1909). Under the will and codicil, the trustees may or may not as they see fit, organize a corporation. Gathering the testator's intent, as we must, from the whole body of the instrument, including the codicil, we hold that it was his purpose to establish a public cemetery, not a private family burying ground.

(b) Viewing the will as designed to establish a public cemetery there it nothing in it repugnant to the rule against perpetuities. The rule against perpetuities is designed to forbid the creation of a future estate that will not vest within the lifetime of a person in being and twenty-one years and ten months thereafter. [Gates v. Siebert, 157 Mo. 254, l. c. 267.] The estate here created vests immediately in the trustees. The rule against perpetuities is not violated because the use to which the land is dedicated may continue in perpetuity, if it were otherwise, then no

cemetery could be established except for a limited period. Besides, our statute expressly authorizes the dedication of land to this purpose (Sec. 1303, R. S. 1909), and even the condemnation of land for the enlargement of the cemetery (section 1310). Land can only be condemned for a public purpose; Hadley v. Forsee, 203 Mo. 418, reported also in 14 L. R. A. (N. S.) 1, where there is a very elaborate and learned discussion of the subject in a note by the editor, wherein a large number of authorities are reviewed. In the conclusion of the note the writer says: "Nor does the rule against perpetuities apply to gifts for charitable uses, and a bequest for a charitable purpose is not rendered indefinite and uncertain, so as to affect its validity by the fact that it creates a perpetuity."

Appellants in their brief seem to concede that if this is a gift to a public charity it does not violate the rule against perpetuities, and that if it is authorized by statute it is valid. That it is authorized by statute is shown by the statutes above quoted, and that it is classed as a public charity, although not so expressly named, is shown by other statutes and by the Constitution. Section 8, article II, of the Constitution, authorizes corporations to be formed to hold title to "church edifices, parsonages and cemeteries." Section 6, article X, exempts cemeteries from taxation, and in the same connection exempts property "used exclusively for religious worship, for schools or for purposes purely charitable." Section 3435, Revised Statutes 1909, authorizes the formation of corporations for certain purposes and therein "any association formed to provide for some good in the order of benevolence, that is useful to the public," specifying in that connection any "association, congregation, society or church or organization formed for religious purposes, and any association formed to provide or maintain a cemetery;" and after enu-

merating a number of other purposes it concludes: "and in general, any association, society, company or organization which tends to the public advantage in relation to any or several of the objects above enumerated." Thus we see the General Assembly, without expressly saying that any particular purpose is a public charity, yet, treating of that subject, enumerates several purposes as in that class, and among them cemeteries. In a very recent case this court has held that a devise to trustees for the purpose of establishing and maintaining a "hospital for sick and injured" was a gift to charitable use, although not specified in the English Statute of Charitable Uses. [Buchannan v. Kennard, 234 Mo. 117.] And it was held in that case that it was none the less a public charity because its beneficence was not limited to the poor, but might be shared by the rich; in that case the court, per KENNISH, J., said: "From the foregoing authorities it clearly appears that the statute (43 Elizabeth, Ch. 4) cannot be looked to as the sole test of what is a public charity, but that many other uses, not named, and not within the strict letter of the statute, but which, coming within its spirit, equity and analogy, are considered charitable." In that case, like the case at bar, the will provided that the hospital was to be conducted "under such rules and regulations as said trustees and their successors shall from time to time establish and maintain." In Campbell v. Kansas City, 102 Mo. 326, the court, discussing a dedication of land to the public for a cemetery, used this language: "Now it seems to us that the dedication in this case falls fairly enough within the general definition of charitable and pious purposes."

We hold that the devise in question was to a charitable use, and is sanctioned by our law. The learned trial judge had the correct view of the law. The judgment is affirmed. All concur.