L. L. NEWTON ET AL., Appellants, v. NEWTON BURIAL PARK.—34 S. W. (2d) 118.

Division Two, December 20, 1930.

*Hiett, Lamar & Covert* for appellants.

*M. T. January* and *W. M. Bowker* for respondent.

BLAIR, P. J.—Action at law to recover $33,200. The action was instituted in Vernon County and was tried in the Circuit Court of Bates County upon change of venue. From a judgment for defendant (respondent here) the plaintiffs were granted an appeal to this court.

William A. Newton died testate, leaving as his widow, Alice F. Newton, who was his second wife. He had no children by either his first or second marriage. The appellants are his nephews and nieces. Alice F. Newton died before this action was instituted.

William A. Newton died seized of extensive real estate holdings. He owned a tract of land near Nevada, in Vernon County, comprising slightly more than thirty-six acres. On October 30, 1911, Newton conveyed this tract to certain persons as trustees for respondent, the Newton Burial Park. The recited consideration was one dollar and an agreement on the part of the Burial Park to deed him one block of ground to be selected by him after the cemetery was platted. The Burial Park previously had secured a *pro-forma* decree of incorporation from the Circuit Court of Vernon County, under the provisions of present Article 11, Chapter 90, Revised Statutes 1919. On January 30, 1912, the trustees conveyed said tract to the Burial Park, subject to the terms and conditions in the Newton deed of October 30, 1911. The articles of agreement of the Newton Burial Park recited that the corporation was organized to acquire the thirty-six-acre tract and to acquire such adjoining tracts as might be necessary ''and to lay it out as a Burial Park for the burial of dead white people without regard to sex, nationality or religious belief. The lots are to be sold at a sum sufficient to pay the expenses of maintaining said Burial Park and no money derived therefrom shall be used as profits, but all income over expenses shall be devoted to improving and beautifying the grounds with driveways, shrubbery, flowers, etc., as may be suggested by the skill of the landscape gardner, subject to the approval of Board of Trustees.'' The Burial Park adopted by-laws, but in the view we take of the case it appears unnecessary to notice them.

On November 19, 1916, William A. Newton executed his will. He died very shortly thereafter. In one of the clauses of his will Newton devised to his wife Alice F. Newton certain lands in Bates County, Missouri, ''to have and to hold for and during the term of her natural life, and at her decease the said land to pass to and become the property of the Newton Burial Park, a benevolent corporation, to be by the said corporation disposed of for the purposes and upon the conditions as follows, viz: the trustees or other proper officers of the said corporation shall make sale of said lands for the said corporation and the proceeds of such sale shall be loaned on first mortgage real estate loan; shall be used in the development, beauti-

fying, ornamenting and maintaining of the cemetery now owned by the said corporation: It being my intention and purpose that the proceeds realized from the sale of said lands shall be kept invested as above provided that a perpetual income fund be created that shall be used for the purposes above named.''

Article VII of Newton's will was in part as follows:

''To my said wife, Alice F. Newton, and to W. J. McGee, of Houston, Texas County, Missouri, the survivor of them and their successors in trust, as trustees, to have and to hold for the purposes of the express trust as hereinafter provided, I give and devise all of my real estate, lands and appurtenances thereto belonging, lying, being and situate in the County of Texas, in the State of Missouri. Such Trustees shall, at such time, in such quantities and on such terms as they may deem advisable, make sale of the said lands and to the purchaser or purchasers thereof make good and sufficient deed of conveyance. The proceeds arising from the sale of said lands by said trustees shall be applied and disposed of as follows, to-wit: One-half of the said proceeds shall be delivered to my said wife, to be by her owned and held as her absolute and unqualified property, and the other half of such proceeds shall become the property of the Newton Burial Park, a Benevolent Corporation, and be by the said corporation used and applied for its benefit in manner as follows, to-wit: The said Corporation, from the funds so derived, by and through its proper officers, shall cause to be built on the Cemetery grounds now owned by said Corporation, a modern and suitable Chapel to be used in connection with services in the burial of the dead at such Cemetery. Not more, however, than Twenty-Five Thousand Dollars of such funds so to be derived shall be used in building and equipping of such chapel. The remaining part of such fund so to be derived to the said corporation as above provided shall be loaned on real estate first mortgage loans and to be so kept loaned, and the interest derived from such loans shall be used in the beautifying, ornamenting and maintaining of the cemetery now owned and operated by said corporation, it being my object and purpose to create a fund from which a perpetual income may be derived for use as aforesaid. . . .

''Any failure to use the means and funds provided in this article and that provided by article No. 5 hereof shall cause such means and funds to revert to my heirs.''

Mrs. Newton was appointed as executrix and administrated Newton's estate. She and her co-trustee, W. J. McGee, sold the lands in Texas County, the consideration for which was stipulated to be paid in installments. Mrs. Newton died in 1924. When this case was tried $33,200 had been received by respondent from the trustees on account of the sale of the Texas County lands, as that part thereof

to be devoted to the purposes set forth in Article VII of the Newton will. Approximately $25,000 in addition had been collected by surviving trustee McGee to be applied for the same purposes. But he had refused to pay it over to respondent because appellants in this case had made the claim upon him that they were entitled to the money. They had filed suit against McGee and that suit was still pending at the time this case was tried.

The chapel had not been erected. The site for it had been selected and marked off by curbing. Mrs. Newton had traveled extensively, studying similar structures in other cemeteries. Sketches of proposed chapel buildings, with estimates of their costs, had been procured from several architects, but no contract had been let for the erection of the chapel. The money received from the sale of the Texas County lands had been invested in notes secured by mortgages or deeds of trust upon real estate.

The Bates County lands had not been sold by the trustees or directors of respondent because of their inability to find a satisfactory market for them. Six thousand dollars of the money received by the respondent from the trustees named in Article VII of the Newton will had erroneously been paid over to Mrs. Newton by the trustees of respondent and they had filed a claim therefor against the estate of Mrs. Newton and the same had been allowed in the probate court and allowance of the claim was pending in the circuit court upon appeal at the time of the trial of this case.

The pleadings need not be noticed further than to state that the petition was based upon the theory that the devise to Mrs. Newton and Mr. McGee as trustees for the benefit of the Burial Park was void because it violated the rule against perpetuities, and, even if said devise was originally valid, "by reason of the failure of said corporation to, as above stated, comply with the terms, conditions and provisions of the said will of the said William A. Newton, the said sum of thirty-three thousand dollars ($33,000) now in its hands derived from the sale of said Texas County land has reverted to, become and now is the property of the plaintiffs herein."

In its answer respondent denied the allegations of the amended petition generally and included a cross-bill, in which it alleged facts tending to show compliance on its part with the provisions of said will and denied any forfeiture of its benefits.

We are fully convinced that the trial court correctly disposed of appellants' contention that the proceeds from the sale of the **Texas**

County lands sued for have reverted to appellants because the Burial Park failed to comply with the terms, conditions and provisions of that part of the will requiring a chapel to be built. The Bates County land had not been sold for want of a market. The chapel

had not been built, but the evidence disclosed a bona-fide purpose on the part of the trustees of the Burial Park to build the same, and progress had been made toward accomplishing it. Mrs. Newton made a number of visits to cemeteries throughout the country to get ideas for constructing the chapel in the Burial Park and further contemplated visits of that character were prevented by her death in 1924. The trustees of the Burial Park had evidenced their ultimate intention of building a chapel by setting aside space for it in the cemetery and marking the same with curbing. The time when said chapel was to be built and the amount to be expended therefor, within the maximum specified in the will, were at least matters for the exercise of reasonable discretion on the part of the trustees and the amount of the expenditure would necessarily be governed by the sum eventually realized from the sale of the Texas County lands. The testimony of the trustees, that they could not well determine the amount to be spent on the chapel until they had all the money in hand appears to us as an entirely reasonable explanation of their delay in beginning the construction of the chapel until this suit was commenced in May, 1926.

We, therefore, find ourselves in accord with the findings of the trial court in favor of defendant (respondent) on the issue of reverter. This leaves as the only question for decision the contention of appellants that the devise to the Burial Park was void because the provisions of the will were violative of the rule against perpetuities.

It may be true that the Burial Park is not a public cemetery in the sense that it could exercise the power of eminent domain, be relieved of the payment of general taxes, etc. It seems unnecessary for us to determine its character in that respect and we do not do so. It was incorporated as a cemetery under the provisions of Article 11, of Chapter 90, Revised Statutes 1919, as a benevolent corporation and as such its duration is necessarily perpetual. Although its use as a cemetery is by its articles of agreement restricted to the burial of dead white persons and even if such restriction rendered it powerless to condemn land, etc., as appellants contend, it does not follow that a gift to such Burial Park does not constitute a charitable trust or a public charity. The cases cited and relied upon by appellants do not deal with a situation of that character.

In re Rahn, 316 Mo. 492, 1. c. 511, 291 S. W. 120, the opinion quoted approvingly from 5 Ruling Case Law, 291, where a charity is defined as follows: "Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing

their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." Full approval of the same definition was also given by this court in Catron v. Scarritt Collegiate Institute, 264 Mo. 713, l. c. 725, 175 S. W. 571.

Ruling Case Law defines a public charity, as follows:

"A gift is a 'public' charity when there is a benefit to be conferred on the public at large, *or some portion thereof,* or upon an indefinite class of persons. Even if its benefits are confined to specific classes, as decrepit seamen, laborers, farmers, etc., of a particular town, it is well settled that it is a public charity. The essential elements of a public charity are that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite unrestricted quality that gives it its public character. . . . A charity may restrict its admissions to a class of humanity, and still be public; it may be for the blind, the mute, those suffering under special diseases, for the aged, for infants, for women, for men, for different callings or trades by which humanity earns its bread, and as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public." (Italics ours.) [5 R. C. L. 293, 294, sec. 3; see also 11 C. J. p. 313, sec. 18.]

The same work defines a charitable trust, as follows:

"Any trust coming within the definition of a legal charity for the benefit of an indefinite class of persons sufficiently designated to indicate the intention of the donor, and constituting some portion or class of the public, is a charitable trust. It has been said that a charitable trust, in a legal sense, is one which originates from the gift, and which limits property to any public use to which it is lawful to devote property forever." [5 R. C. L. sec. 4, p. 294.]

Newton's will provided that the Texas County lands should be sold and the proceeds devoted to the erection of the chapel in the Burial Park at a cost not to exceed $25,000, and that the remainder of such proceeds and the proceeds of the Bates County land, after termination of his widow's life estate therein, should be put at interest and such interest should be used in "beautifying, ornamenting and maintaining the cemetery." Both the building of the chapel and the beautifying, ornamenting and maintaining of the cemetery were for the benefit of an indefinite number of the public of the white race and thus fulfill the foregoing definition of a charitable trust or public charity. The said gifts were not limited in such man-

ner as to constitute them a private charity. [11 C. J. 324, sec. 34; Stewart v. Coshow, 238 Mo. 662, 142 S. W. 283.]

That the will created a perpetuity, in so far as it directed the use to be made of the proceeds from the sale of the lands in Texas and Bates counties, is asserted by appellants and not denied by respondent. But the rule against perpetuities does not apply to gifts for charitable uses and purposes. [5 R. C. L. sec. 13, p. 300; 48 C. J. 986, sec. 78; Stewart v. Coshow, supra, l. c. 674.]

The proceeds of the Texas County lands here sued for had already vested in respondent's trustees when this action was instituted. The statement in appellants' brief that respondent "admitted that it had not yet accepted the bequest and had not agreed to comply with the terms of the will" is wholly unjustified by and contradictory of the allegations of respondent's answer and cross-bill. This action is solely one at law to recover the money received by respondent. Hence, as to such gift, there can be no issue that the gift may not vest within the period fixed by the rule against perpetuities.

We hold that the gift received by respondent and now sued for by appellants was one for charitable purposes and was not void as violative of the rule against perpetuities and that appellants are not entitled to receive it.

We do not think the 1919 Act, now Section 1094, Revised Statutes 1919, affects this conclusion. That act was not passed until after Mr. Newton's death. Prior to its enactment, a gift to a cemetery which constituted a charitable trust was entirely valid. The 1919 Act provided for gifts to cemeteries as such, regardless of their character as public or private cemeteries, and even provides for gifts to care for a particular lot in any cemetery.

The right or power of respondent to receive and administer the gift as trustee, for want of charter power to do so, cannot and does not create in appellants any right to recover for themselves the funds now held by respondent, which we have concluded constitutes a charitable trust. We do not find it necessary to consider respondent's power in that respect, as the question of such power is not properly involved within the issues here. A trust will not be permitted to fail because the trustees named in the instrument creating it cannot administer the trust for any reason whatsoever. In such case a court of equity will appoint a trustee to administer the trust.

The conclusion we have reached makes it unnecessary for us to consider respondent's contention that the gift to build a chapel and beautify the cemetery grounds upon which it is to be built is valid as a gift to a pious or religious use and hence not violative of the rule against perpetuities.

The judgment is affirmed. All concur.