Hart, J.,
 

 dissenting. The American Bible Society for over a century has been engaged in printing, publishing and distributing the King James Version of the Holy Bible without word or comment. It is a corporation not for profit, engaged in the distribution of Bibles free to those who are unable to pay for them, and at cost to those who are able to buy them. The society is financed by gifts of the people and no profits are distributed to anyone. In the past 30 years it has expended over $275,000 in Ohio, and over $9,000,000 in the United States in carrying on this work. It engages in no commercial business, and, without respect to race, creed or religion, makes distribution of its Bibles on equal terms to all members of the public who will accept them.
 

 I agree with the majority that the society is not a “public institution of learning.” The only other question before the court is whether, under the statute, it is “an institution for purposes only of
 
 public
 
 charity.” Its objective is to promote the spiritual welfare of the people by the diffusion of the Holy Scriptures. In so doing, it administers to people of all religions. Portions, if not all of these scriptures, are acceptable to the adherents of the Jewish and Christian religions, the latter being represented by the Catholic and Protestant faiths. These are recognized as the prevailing forms of religion in this country. Because of the uplifting effect of religion, the government is interested
 
 *425
 
 in its promotion in the broadest non-sectarian sense. This is substantiated by a declaration in one of the foundation charters of our state government. Article III of the Ordinance of 1787, for the organization of the Northwest Territory, in part reads:
 

 “Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged. ’ ’
 

 It is not denied in the majority opinion of this court that the distribution of Bibles by the American Bible Society constitutes a charity, but it is claimed that such distribution is not a
 
 public
 
 charity because the Bibles are used “only by a part of the people,” and, therefore, the distribution constitutes the “propagation of a branch of the Christian religion. ’ ’ In my view, this definition of a “public” charity is too narrow, and certainly is not supported by the decisions of other courts.
 

 In giving the definition of
 
 public charity,
 
 as summarized from the leading eases in this country, 10 American Jurisprudence, 588, Section 5, says:
 

 “A
 
 public charity
 
 is one in which there is a benefit to be conferred on the public at large, or some portion thereof, or upon an indefinite class of persons. * * * The essential elements of a
 
 public charity
 
 are that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite, unrestricted quality that gives it its public character. * *
 
 *
 
 A charity may restrict its admissions to a class of humanity and still be public. It may be for the blind, for the mute, for those suffering under special diseases, for the -aged, for infants, for women, for men, or for different callings or trades by which humanity earns its bread, and as long as the classification is determined by some distinction which involuntarily affects or
 
 may
 
 affect
 
 any
 
 of the
 
 whole
 
 people, although
 
 only a small number may be directly benefited,
 
 it is public.” (Italics mine.) See,
 
 *426
 
 also,
 
 Newton
 
 v.
 
 Newton Burial Co.,
 
 326 Mo., 901, 908, 34 S. W. (2d), 118;
 
 Donohugh’s Appeal,
 
 86 Pa., 306, 318;
 
 City of Bangor
 
 v.
 
 Rising Virtue Lodge No. 10, F. & A. M.,
 
 73 Me., 428, 434;
 
 People, ex rel. Carr,
 
 v.
 
 Alpha Pi of Phi Kappa Sigma Educational Assn. of University of Chicago,
 
 326 Ill., 573, 577, 158 N. E., 213;
 
 People
 
 v.
 
 Y. M. C. A. of Chicago,
 
 365 Ill., 118, 6 N. E. (2d), 166.
 

 To illustrate, many college and school textbooks adopt the Darwinian theory of evolution to explain the origin of man and for that reason such textbooks are not acceptable to those who hold the view of the fundamentalist who accepts only the literal Biblical account of man’s creation. But, it would certainly not be contended that any institution engaged exclusively in the gratuitous distribution of such textbooks to all those who will accept them, is not a charitable institution engaged in
 
 public
 
 charity.
 

 In the case of
 
 Humphreys, Exr.,
 
 v.
 
 State,
 
 70 Ohio St., 67, 70 N. E., 957, this court had under consideration the taxation of a bequest to this same American Bible Society. The exemption of the bequest from taxation was denied under the statute then in force, not because the American Bible Society was not an institution engaged in public charity, but because it was not an institution wholly within this state, a situation not now required under the present form of our statute. Judge Price, speaking for this court in that case, as already quoted in the majority opinion, and as stated in the further course of his opinion indicated that the American Bible Society was engaged in the work of public charity, but denied the exemption on the sole ground that it was, as then organized, not an “institution of said state” of Ohio.
 

 The work and functions of the American Bible Society are the same now as when Judge Price made his pronouncement. Since that day, the barrier to exemption from taxation of gifts to the society has been re
 
 *427
 
 moved by amendment of the statute, and, in my judgment, the society is clearly entitled to the exemption from taxation, which it now seeks on the legacy under consideration.