BARKLEY *et al.*, *Appellants*, v. DONNELLY *et al.*

In Banc, December 12, 1892.

1. **Constitution**: DEVISE TO CHURCH: EXCESS OF ONE ACRE. Where more than one acre of land is devised to a church, and the title to all in excess of the one acre fails, the devise of the residue is valid notwithstanding the provision of the constitution making void every devise of land for such purpose exceeding one acre in extent. (Constitution 1865, art. 1, sec. 12).

2. ———: ———. The heirs of a testatrix cannot question the validity of a provision in her will whereby a religious school is provided for, where, if such devise is unconstitutional, the heirs, by reason of other clauses of the will, would have no interest in the property so devised.

3. **Charitable Use**: INDEFINITENESS OF OBJECT: EQUITY. A devise "for a home and place for the maintenance and education of poor children," is not too indefinite and uncertain to be enforced in equity.

4. ———: ———: CY PRES. Where the means are provided by the testator to carry out the intended charity, equity will not permit it to fail because conditions not foreseen and contemplated may have arisen, or because the specific directions of the donor cannot be literally executed in the manner pointed out in the will.

5. ———: ———: MUNICIPAL CORPORATIONS. Municipal corporations may have property vested in them for charitable uses, and may be compelled in equity to administer the trust.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Gates & Wallace* and *Karnes, Holmes & Krauthoff* for appellants.

(1) When real and personal property is devised or bequeathed in trust for a charity which is too indefinite to be carried out, the trustees hold the legal title for the heirs at law or next of kin. And a bill in equity

will lie to enforce the resulting trust by compelling a conveyance or decreeing the title out of the trustee and in the plaintiffs. *Howley v. James*, 7 Paige, 213; *Reed v. Williams*, 125 N. Y. 560; *Easterbrooks v. Tillinghast*, 5 Gray, 17; *Finlay v. King's Lessee*, 3 Pet. 383; *King v. Mitchell*, 8 Pet. 327; *Ford v. Dangerfield*, 8 Rich. (S. C.) Eq. 95; *Bowers v. Smith*, 10 Paige, 193. (2) Under the decisions of our own supreme court a court of equity has jurisdiction to construe the will and determine and settle the title to the property attempted to be disposed of independently of the question of trust. *Church v. Roberson*, 71 Mo. 326; *Howe v. Wilson*, 91 Mo. 45; *Powell v. Hatch*, 100 Mo. 592. (3) The plaintiffs claim upon this point that the trust upon which the residence property was devised, that is, so far as it exceeds one acre, and the directions to the executors as to the application to be made of the residuum of the property (the interests in Shelly Park), are void as being contrary to sections 12 and 13 of article 1 of the constitution of the state of Missouri of 1865. *Church v. Robberson*, 71 Mo. 326; *Kendrick v. Cole*, 61 Mo. 572; *Smucker's Estate v. Reel*, 61 Mo. 593; *Boyce v. Christian*, 69 Mo. 492. (4) There is no power in the City of Kansas, which is a dry trustee of the legal title to the Fry place, or in the trustees of the Gillis opera house, who are to keep up the home for poor children, or in anybody else, to determine who are "poor children," or to select from that innumerable multitude upon the earth those that shall partake of the testatrix's bounty. That these trusts are void we rely upon the following authorities: *Grimes' Ex'rs v. Harmon*, 35 Ind. 198; *White v. Fisk*, 22 Conn. 31; *Heiss v. Murphy*, 40 Wis. 276; *Fontain v. Revènel*, 17 How. 369; *Beal v. Drane*, 25 Ga. 430; *Hughes v. Daley*, 49 Conn. 34; *Le Page v. McNamara*, 5 Iowa, 124; *Bridges v. Pleasants*, 4 Ired. Eq. 26. (5) There are

no means provided and no power, authority or directions given in the will for the building of any home for poor children on the Fry place. And the bill alleges that there is not now and never has been on the said Fry place any home for poor children.

*E. L. Scarritt, Gardiner Lathrop* and *Jas. F. Mister* for respondents.

(1) This is an attempt by persons who have neither had trust relationship to nor beneficial interest under a will, and who have no possible interest except upon the basis of its voidness, to obtain indirectly and upon false premises a construction of the will. The relief they ask has never been given except to those interested in the carrying out of a will, and never to those seeking to destroy it. *Hayden's Ex'r v. Marmaduke,* 19 Mo. 403; *Baptist Church v. Roberson,* 71 Mo. 327; *Bailey v. Briggs,* 56 N. Y. 407; *Howe v. Wilson,* 91 Mo. 45; *Chapman v. Montgomery,* 63 N. Y. 221; *Walworth v. Handy,* 24 How. 352; *Onderdonk v. Mott,* 34 Barb. 106; *Woodruff v. Cook,* 47 Barb. 304; *Post v. Hover,* 33 N. Y. 593; *Bailey v. Southwick,* 6 Lansing, 355; *Bowers v. Smith,* 10 Paige, 193; *Cozart v. Lyon,* 91 N. C. 282; *Simmons v. Hendricks,* 8 Ired. Eq. 84. (2) A court of equity will never give an abstract opinion on the construction of a will. (This is what is virtually asked of the court in this case). *Little v. Thorne,* 93 N. C. 69; *Shoubler v. Belsey,* 79 Ill. 307; *Burgess v. Railroad,* 99 Mo. 509. (3) Aside from these things it appears by the will set forth in the plaintiffs' petition that there is neither indefiniteness nor uncertainty in the devises, nor in the subject or object of the charities, nor in the means of supporting and maintaining them. (4) If the failure of the title to the lots devised for the Episcopal college left

nothing upon which the residuary clauses in the will could operate, then plaintiff could sue at law for everything attempted to be disposed of by said residuary clause. And if any property vested in the Episcopal Church under the will, in excess of the constitutional limit, the state must inquire into the matter by a proper proceeding. It is not for plaintiffs to complain. *Chambers v. St. Louis*, 29 Mo. 543.

THOMAS, J.—This is a suit in equity by the heirs of Mary A. Troost to recover the beneficial interest in certain property in Kansas City, attempted to be donated by the will of Mrs. Troost to certain religious and charitable objects, and asking a construction of the will for this purpose.

The circuit court rendered judgment sustaining a demurrer to the petition, dismissing the suit, and for the recovery of costs against the plaintiffs. From this judgment the plaintiffs appeal.

The petition sets out the will *in hæc verba*, which after devising considerable property to the plaintiffs, and making a few other special bequests, contains the following:

"Item 17. I give and devise to Charles Field, Michael Dively and H. W. Cooper, all of Kansas City, lots numbered 3, 4, 5 and 6, in block 83 in East Kansas; also my residence property on the corner of Fourth and High streets in the City of Kansas; * * * in trust, however, for the following purposes: That there may be built and maintained on said lots 3, 4, 5 and 6, an Episcopal church to be called 'St. Mary's Church,' and an Episcopal male and female college to be called 'St. Mary's College,' and my said residence property for a parsonage house for the rector of St. Mary's Church, as soon as such congregation shall be organized after the requirements of the Episcopal Church, and provided

with a rector. I then direct and require that said trustees, the survivor or survivors of them, or the heirs of such survivor, by a good and sufficient deed, convey said lots and residence to the vestry of St. Mary's Church or to such persons as the said congregation and the rules of the Episcopal Church may select, to be by such persons and their successors held, for the purposes hereinbefore stated, to the end that the title to such property may be under the control of such church for the purposes aforesaid.

"Item 18. I give and devise to the City of Kansas the parcel of land  *  *  *  containing from five to ten acres  *  *  *  called the 'Fry Place,' to hold the same in trust, however, for the following uses and none other: for a home and place for the maintenance and education of poor children, and the same shall be called the 'Gillis Orphan Asylum.'

"Item 19. I give and devise to John Campbell, William S. Gregory and Bernard Donnelly all of the City of Kansas, lots 209 and 210, in block 21 in the old town of the City of Kansas, in trust, however, that they and their successors in this trust shall, when the Gillis opera house is built, keep the same in repair, well insured, and pay all taxes and other necessary and proper expenses connected with the management of the same, and the net proceeds arising therefrom, by way of rents or otherwise, use in keeping up the Gillis orphan asylum, hereinbefore provided for, and in carrying out the beneficial object and design of that institution.  *  *  *

"Item 20. I hereby authorize, empower and direct my executors to sell all of my real estate, not hereinbefore disposed of, be the same where it may, and out of the proceeds of the same and of the assets of the Gillis estate, not otherwise herein disposed of, to build and construct in a substantial manner and in good

style an opera house on said lots 209 and 210,   *   *   *
and in front of such building shall be placed, in a durable and conspicuous position, a marble block or slab with the name of 'Gillis Opera House' engraved thereon, and such house, when completed with business rooms on the first floor, and for the purpose which its name imports, and otherwise, so as to produce rents, shall cost not less than $100,000, and not more than $125,000, the sum between the limits to be determined by my executors.

"Item 21.   After the devises and bequests hereinbefore made, and after the completion of the Gillis opera house, should there be anything, and whatever is left, I direct that my executors use and apply in building a male and female college on the lots hereinbefore set apart for the same and called 'St. Mary's College;' and in building the same my executors will consult the vestry of St. Mary's Church, it being intended that such college shall be an Episcopal institution and under the government of the Episcopal Church.

"Item 22.   Should there not be sufficient of my estate to build the Gillis opera house, and reserve the Fry place for the Gillis orphan asylum, after the other devises and bequests hereinbefore those made, then I authorize and empower my executors to sell said lots 209 and 210 and the Fry place, together with the other remaining property after the other devises and bequests hereinbefore those made, and out of the proceeds purchase another site for an opera house and orphan asylum and thereon build such an opera house and asylum, as the means will admit of, following the directions hereinbefore given as nearly as may be."

The testatrix appointed Bernard Donnelly, Jr., and Francis M. Black her executors.   The will was executed

November 28, 1871, the testatrix died in January, 1872, and the will was probated January 13, 1872.

The petition proceeds as follows:

"Plaintiffs state that said Gillis opera house, provided for in item 20 of said will, has long since been complete, and said trustees are in possession receiving the proceeds from the rents and use of the same.

"Plaintiffs further state that there is not now, and never has been, on the said Fry place, described in item 18 of said will, any home or place for the maintenance or education of poor children or any orphan asylum, and that there is not, and never has been, any money or means provided by said will, or otherwise, to build any such home or asylum; that there has not been used and cannot be used any proceeds of the income of said Gillis opera house to support or maintain any such home or asylum. Plaintiffs state that the said City of Kansas has not now, and never has had at any time, any power or authority under its charter to build or to provide the means for building any such home for poor children or asylum.

"Plaintiffs say that the description in said will of the persons who may have been intended by the said testatrix as the objects of her charity, in the devise of the said Fry place to the City of Kansas, in the devise of lots 209 and 210 of block 21, in the old town of the City of Kansas, to John Campbell, William S. Gregory and Bernard Donnelly, and in directing her executors to build the Gillis opera house on said lots, is so indefinite and uncertain that said objects cannot be ascertained; that there are no means provided in said will for the ascertaining of the same; that there are no means provided in said will for building any home for poor children, nor any power, authority or directions given therefor; wherefore plaintiffs say that the purposes for

which the said devises and directions were made cannot be carried out, and the City of Kansas now holds the legal title to the said Fry place, and the said trustees, John Campbell, William S. Gregory and Bernard Donnelly, hold the legal title to the said lots 209 and 210, and the Gillis opera house, which has been built thereon, in trust for these plaintiffs as the heirs at law of the said testatrix. The plaintiffs say that the lands and lots described in item 17 of said will, and bequeathed to an Episcopal church thereon to be constructed, contain in the aggregate more than one acre; that said residence property, on the corner of Fourth and High, in the City of Kansas, alone contains one acre of ground; that neither the title nor possession of said lots 3, 4, 5 and 6, in block 83, in said East Kansas, is in said trustees, Charles Field, Michael Dively and H. W. Cooper or their successors, or in any such Episcopal church or churches or in anyone for them, or for either of them, and that the title of Mary A. Troost to said lots 3, 4, 5 and 6 has failed.

"Plaintiffs say that there is property of great value belonging to said estate not specifically mentioned in said will, which has never been disposed of by said executors, or their successors, to-wit, an undivided one-seventh of a block of ground in the City of Kansas, known as 'Shelly Park;' that owing to the prohibition contained in the constitution of the state of Missouri of 1865, and the fact that the title of said lots 3, 4, 5 and 6 has failed as aforesaid, said Episcopal church, the beneficiary therein, can take nothing under said residuary clause, item 21 of said will. Plaintiffs say that there are conflicting claims set up to said property in said will described in the provisions of said will, and that a controversy has arisen between the plaintiffs and defendants as to the disposition of certain property in said will mentioned.

"Wherefore plaintiffs pray that the City of Kansas may be divested of the title to the said Fry place, and that the same be vested in the plaintiffs, and that the City of Kansas be compelled to convey the same to the plaintiffs; that the defendants, John Campbell, William S. Gregory and Bernard Donnelly, be divested of the title to said lots 209 and 210, in block 21, in the old town of Kansas City, and the Gillis opera house, which is built thereon, and that the same be vested in the plaintiffs, and that the said John Campbell, William S. Gregory and Bernard Donnelly be compelled to convey the same to these plaintiffs.

"Plaintiffs ask the advice and direction of the court as to the proper and just construction and effect of the several clauses in said will, the rights of the devisees and legatees of the will under the same, and of the plaintiffs and heirs of Mary A. Troost as aforesaid, and of the duties of the trustees and executors in regard thereto, and that plaintiffs may have such relief, order, judgment and decree as may be just and right and proper herein."

I.    With reference to the Episcopal church and college, it is claimed by the plaintiffs that the trust upon which certain property was conveyed for the church and college, and the directions given to the executors to sell the residuum mentioned in items 20 and 21, and apply the proceeds in the building of the Episcopal college, are void, in so far as they exceed the one acre of land allowed to be given for such a purpose by sections 12 and 13, article 1, of the constitution of 1865.

So far as the land devised is concerned, this point is not well taken. Sections 12 and 13 of article 1 of the constitution of 1865 make void every gift, sale or devise of land, exceeding one acre in extent, "to any minister, teacher or preacher of the gospel, as such, or

to any religious sect, order or denomination." In this case the testatrix devised to the church her residence property on the corner of Fourth and High street, in the City of Kansas, and lots 3, 4, 5 and 6 in block 83 in East Kansas, all of which, it is averred, exceeded one acre in extent, but it is charged that the title to lots 3, 4, 5 and 6 in block 83 has failed, and there is no averment that the residence property exceeds one acre; indeed, there is an affirmative allegation that it contains one acre. Hence, the church, according to the allegations of the petition, does not now hold property exceeding one acre in extent. We think the proper construction of these sections of the constitution does not require a church to give up property not exceeding one acre in extent, simply because the will or deed by which it derived title devised or conveyed land exceeding one acre in extent, but the title to the excess having subsequently failed.

As to the provisions of item 21, by which the executors are directed to sell the residue of the estate, and apply the proceeds to the erection of a college on lots 3, 4, 5 and 6 above mentioned, the plaintiffs seem to be in an awkward dilemma. If those provisions are void as being in contravention of sections 12 and 13 of article 1 of the constitution of 1865, as plaintiffs assert, then that item must be rejected as nugatory, and as having no proper place in the will, and in that event item 22 becomes unquestionably the residuary clause, and plaintiffs fail to show — indeed they cannot show — that anything will be left after the provisions of that clause are carried out, and if the provisions of item 21 are not in contravention of an express constitutional inhibition, and, therefore, not void, the plaintiffs, of course, have no interest in the residuum. Hence, it is not necessary for us to decide the question,

as upon either hypothesis plaintiffs have no rights in the property described that the courts can recognize.

II. Another contention of plaintiffs is that the trusts upon which the Fry place, and the lots upon which the Gillis opera house has been built were devised, cannot be carried out for two reasons: *First*, because the beneficiaries thereof are so indefinite and uncertain that they cannot be ascertained, there being no power in the City of Kansas or the trustees named "to determine who are 'poor children,' or to select from the innumerable multitude upon the earth those that shall partake of the testatrix's 'bounty.'"

This proposition cannot be maintained. The bequest is for a charity and for charitable uses. The beneficiaries then are "poor children" who are objects of charity, and *such* "poor children" are and have always been a well-recognized and a well-defined class.

But it is urged that the bounty must wholly fail, because the charity of this lady extended to an "innumerable multitude," and was as broad as the earth. We cannot yield assent to this doctrine. When the asylum is built, and is filled to its capacity with poor children, it would be inhuman to turn those out who are under its protecting care, because it could not receive all who might apply, and who might be found to be worthy. The charitable institutions of earth will not be closed, ought not to be closed, simply because they have not the means or capacity to relieve all the suffering that flesh is heir to. The poor we have always with us, and our first and most sacred duty is to care for those who are unable to care for themselves, and courts of equity have always been liberal in the construction of wills devising property for charitable uses.

Among others, the following devises have been upheld: "To furnish relief to all poor emigrants and travelers coming to St. Louis on their way *bona fide*

to settle in the west" (*Chambers v. City of St. Louis*, 29 Mo. 543); "for the worship and service of God" (*Attorney General v. Pearson*, 3 Meriv. 352); "for objects and purposes of charity, public and private" (*Saltonstall v. Sanders*, 11 Allen, 446); "for the benefit of the Christian religion, to be applied in such manner as, in the judgment of the executor, would best promote the object named" (*Miller v. Teachout*, 24 Ohio St. 525); "such charitable institutions of the city of St. Louis, Missouri, as the executor might deem worthy" (*Howe v. Wilson*, 91 Mo. 45); for "such charitable purposes" as the trustee might deem best (*Powell v. Hatch*, 100 Mo. 592); for "the suffering poor of the town of Auburn" (*Howard v. American Peace Society*, 49 Me. 288); and for "a church school for boys" (*Halsey v. Convention*, 23 Atl. Rep. [Md.] 781).

*Second*. In the second place, it is urged, that the trusts in regard to the orphan asylum cannot be carried out because there are no means provided or authority given in the will for the building of any home for poor children. This presents a more difficult and doubtful question.

The intent of the testatrix, if ascertainable from the four corners of the will, must prevail. What is that intent in respect of the Gillis orphan asylum? It is manifest from the last three items of the will that her executors were clothed with power and authority to sell her real estate, not specifically devised, and convert the same into money, so that none of it should remain *in specie* as a residuum. And though involved in some doubt, we think the testatrix intended that her executors should, *out of the moneys of her estate*, build a home on the Fry place for the maintenance and education of poor children. This appears: *First*. From the fact that she devised valuable real estate and from $100,000 to $125,000 in cash to build an opera house, the rents of

which are to be applied "in keeping up the Gillis orphan asylum hereinbefore provided for, and in carrying out the beneficial object and design of that institution." It is inconceivable that she would make such munificent bequests to *keep up* that which she had made no provision to establish. *Second.* She directs that the Fry place be held in trust for "*a home* and *place* for the maintenance and education of poor children." A place without buildings is not *a home* in any proper sense of the word, as understood in our times, and, hence, she must have had in contemplation the erection of buildings in which poor children might be maintained and educated. *Third.* In item 22 directions are specifically given to sell certain property in a certain contingency, "and out of the proceeds purchase another site for an opera house and asylum, and thereon *build such an opera house and asylum* as the means will admit of, following the directions hereinbefore given as nearly as may be."

We think it clear that the testatrix intended the devise of money to build the college on the lots described to be subject to all the provisions of the will in regard to the orphan asylum, whether contained in prior or subsequent clauses. That this asylum was the special object of her bounty and solicitude is evident from many considerations. She desired to perpetuate the name of her uncle Gillis, from whom she had derived some property, but above and beyond this she desired to provide for the care and education of poor children. Ample provision was made for a place for the asylum and for keeping it up and carrying out the beneficial object and design of the institution in items 18, 19 and 20, and, as we have seen, in construing the whole will together, means were provided to build the asylum. Then comes item 21, under which plaintiffs claim the residuum of the estate, the devise, as they

claim, to the church for a college being void. The devise contained in this item is "after the devises and bequests hereinbefore made, and after the completion of the Gillis opera house," and is subject to the condition that something should be left. Then follows the significant language of item 22, which is: "Should there not be sufficient of my estate to build the Gillis opera house and reserve the Fry place for the Gillis orphan asylum, after the other devises and bequests hereinbefore made, then I authorize and empower my executors to sell said lots 209 and 210 and the Fry place, *together with the other remaining property after the devises and bequests hereinbefore made,* and out of the proceeds purchase another site," etc. Can anyone read items 17, 18, 19, 20, 21 and 22 of this will, and not be irresistibly driven to the conclusion that the bequests made by item 21 are not subordinated to those made by item 22? We think not. The orphan asylum should be built and provided for first, and then should there be anything, and whatever is left, would go into the residuum of the estate.

The construction attempted to be put upon item 21 that, because the opera house has been built and the Fry place reserved, the executors have no power to sell the property, or any of the property therein mentioned, to carry out the evident intention of the testatrix, is strained and technical, and is not in harmony with the spirit of her will. The intent that a *home* should be established and kept up for the maintenance and education of poor children being clear, and the means having been provided to carry out this intent, the court will not let the charity fail because conditions not foreseen and contemplated may have arisen, or because the specific directions of the donor cannot be literally executed in the manner pointed out. *Missouri Historical*

*Society v. Academy of Science*, 94 Mo. 459, and cases cited.

III. Municipal corporations may hold property for charitable uses, and they may be compelled in equity to administer and execute the trusts reposed in them. No valid objection can, therefore, be raised to this trust because it is vested in the City of Kansas. *Chambers v. City of St. Louis, supra.*

It appearing from the petition that plaintiffs have no trust relationship to, or beneficial interest under the will or by inheritance in, the property sought to be affected, the demurrer was properly sustained, and the judgment will be affirmed. All concur, except BLACK, J., who did not sit.