Annie Bunton Parsons, Loula Bunton Shely, Dora Bunton Cunningham, Harry Davenport, Evelyn A. Blain, Owen Davenport, Mrs. Betty Knox, Mrs. Verna Hutchison Gudgell, George Daniel Smith, Mary E. Jordan, Lawrence E. Sanders, Martha E. Buckles, Elizabeth (Sanders) Hoffman, Eva M. Royalty, David Cunningham, Appellants, v. David B. Childs and Herbert V. Jones, Trustees of the Mary Atkins Residuary Estate—136 S. W. (2d) 327.

Division One, January 23, 1940.

*David C. Finley* and *Martin J. O'Donnell* for appellants.

*Charles M. Blackmar, Elliott H. Jones* and *Samuel W. Sawyer* for respondents.

692

CLARK, J.—Appeal from the Circuit Court of Jackson County. The petition was filed in 1936 and alleges: that plaintiffs are the heirs of Mary Atkins who died a resident of Kansas City, Missouri, October 13, 1911, leaving by last will an estate of about $1,000,000; the will is set out in full and provides specific bequests totaling nearly $600,000 and then contains the following:

"After the payment of all my just debts, and after the payment of the above mentioned specific legacies, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, of which I may be seized or possessed, or over which I may have testamentary control, or to which I may be in any way entitled, of whatsoever the same may consist or wheresoever situate, to A. W. Childs and Herbert V. Jones, in trust, for the following purposes: For the purchase of the necessary ground in Kansas City, Missouri, and the erection of a building to be maintained and used as a Museum of Fine Arts for the use and benefit of the public, to be called the 'Atkins Museum of Fine Arts.' I give to my said trustees full power to select and purchase the ground, and to erect and furnish said building in such manner as in their discretion they shall deem most fitting and appropriate. They shall have authority to determine the size of the lot on which said building is to stand, and the amount to be paid therefor, and if in their judgment the remainder of my estate shall be sufficient, they may apply any surplus remaining over, after the purchase of the ground and the erection of the building, to the acquisition of such pictures, paintings, statuary or other works of art as they may deem appropriate for exhibition in said Museum, or they may create an endowment fund, the annual income from which shall be devoted to the support of said Museum. If Kansas City shall give its consent, said building may be constructed in any public park or on any grounds owned by Kansas City, or if Kansas City shall consent, and my said trustees shall so elect, said building may be erected on any ground acquired or set apart by Kansas City for what is generally known as a 'civic center' and if

my said trustees shall deem it advisable they may convey said Museum of Fine Arts together with the ground on which the same is situated, to Kansas City upon such terms as to future maintenance as my said trustees may deem fit and proper; provided, however, that any such conveyance shall contain a condition providing that said Museum shall at all times be maintained and conducted for the use and benefit of the public, and that it shall be called the 'Atkins Museum of Fine Arts.' If Kansas City should fail, neglect or refuse to accept said Museum upon such terms as may seem just and fair to my trustees, then my said trustees, or their successors in this trust, shall have full power and authority to manage and control said Museum of Fine Arts for the use and benefit of the public, in such manner as to them may seem fit and proper.''

The will names A. W. Childs and Herbert V. Jones as executors; the petition further states: the residuary estate at the death of testatrix was about $300,000, and at time of suit had been increased to not less than $675,000; that trustee A. W. Childs died in 1933 and defendant, David B. Childs, was duly appointed as successor trustee; that the will was duly probated on October 16, 1911, and the executors made final settlement on February 14, 1934; that about two years prior to the death of A. W. Childs the trustees ''arbitrarily commingled testatrix' residuary estate funds with funds provided by will of Ida H. Nelson, widow of the late William Rockhill Nelson, and funds provided for by wills of the daughter of said Nelson and Ida his wife and his son-in-law, Irvin R. Kirkwood, and the combined funds were used in the erection of the building known in Kansas City as the 'William Rockhill Nelson Gallery of Art' building, a building designated in the will of said Ida H. Nelson to be for the purpose of housing the works of art provided for under the will of said William Rockhill Nelson, and for housing the 'Western Gallery of Art,' an art collection of copies purchased by said Nelson during his lifetime;'' the petition then states that the plaintiffs are non-residents of Missouri and that they are suing for themselves and all other lawful heirs; that on receiving definite information of the commingling of funds, which information came to them about a year prior to the filing of the suit, they requested the trustees to bring the matter of funds commingling before the court for determination, which request was refused; that plaintiffs then brought the matter to the attention of the Attorney General of the State for consideration as to whether the matter came within his official duties; that to this request defendant trustees made a vigorous memorandum protest in which they stated:

''A person may provide a trust fund for the purchase of pictures, but a trust fund of this character is of no benefit to the public unless a building is provided for the exhibition; and, likewise a person may provide a trust fund for the building of an art museum, but the build-

694

ing is of no benefit to the public unless works of art are provided to be exhibited therein. So it will hereafter appear, it took the combined beneficiencies of Mr. Nelson, Mrs. Atkins, Mrs. Nelson, Mr. and Mrs. Kirkwood, and Mr. Rozzell to establish an art museum in Kansas City, of the first rank;'' that the Attorney General declined to act, ''accepting the trustees' plea that testatrix had not created a beneficial trust.'' The prayer of the petition is as follows:

''Wherefore, plaintiffs pray the court to find and decree that testatrix in dedicating her residuary estate to the two purposes of purchasing ground and erecting a building thereon did not create a trust that the court will execute and is void; and that said residuary estate funds must go to testatrix' lawful heirs and next of kin as undisposed portion of testatrix' estate and for such other and further orders as may to the court seem just and proper.''

To the petition defendants filed separate, but identical, demurrers alleging, among other things, that plaintiffs are without legal capacity to sue and are not proper parties plaintiffs; that the Attorney General is the only person entitled to sue; that the petition does not state a cause of action; and that the petition shows that plaintiffs are guilty of laches and their alleged cause of action is barred by limitations.

The chancellor sustained the demurrers; plaintiffs declined to plead further; judgment was rendered for defendants and plaintiffs have appealed.

Appellants contend: that the will does not create a valid charitable trust, because it provides only for the purchase of a site and erection of a building, making no provision for assembling works of art, and that a bare building would be of no public benefit; that even if provision had been made for assembling works of art, the trust would fail because no provision is made for maintenance; that the *cy pres* doctrine cannot be invoked because (a) no charitable trust has been created, (b) the attempt was to create a trust for a specific purpose, to-wit, the purchase of a site and the erection of a building, and that neither the trustees nor a court of equity can expand this purpose to permit the assembling of works of art or for maintenance.

Appellants also contend that the respondents, by their demurrers, admit certain allegations of the petition to the effect that the will does not create a charitable trust.

Respondents controvert all the contentions of appellants and, in addition, say that appellants are not proper parties plaintiff and that the petition shows on its face that the alleged cause of action is barred by laches and limitations.

Counsel have ably briefed the law in relation to charitable trusts, citing many decisions of this and other courts. After reading all the cases cited, we conclude that the courts generally agree in

stating the abstract principles of this branch of the law. The protection of such trusts have been, from the earliest time, a principal function of courts of equity. [Dickey v. Volker, 321 Mo. 235, 11 S. W. (2d) 278; Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369; Estate of Peabody, 154 Cal. 173, 97 Pac. 184; 2 Bogert on "Trusts & Trustees," p. 1130, sec. 369; 10 American Jurisprudence, p. 593, sec. 12.] The old English doctrine that there was a prerogative power of the King over charitable trusts, is not recognized in this country and particularly in this State. The *cy pres* rule, as we apply it, is the exercise of judicial power only. Our courts will liberally interpret the trust instrument to ascertain and enforce the main purpose of the donor as nearly as possible where it cannot be done literally; but, if it is clear that the donor intends the trust to be performed in a certain way *only* and that way is impossible, the trust must fail. [Thatcher v. St. Louis, 335 Mo. 1130, 76 S. W. (2d) 677; Womens' Christian Association v. Kansas City, 147 Mo. 103, 48 S. W. 960; Lackland v. Walker, 151 Mo. 210, 52 S. W. 414; Barkley v. Donnelly, 112 Mo. 561, 19 S. W. 305; Sappington v. School Fund Trustees, 123 Mo. 32, 27 S. W. 356; Estate of Peabody, 154 Cal. 173, 97 Pac. 184; Jones' Unknown Heirs v. Dorchester (Tex. Civ. App.), 224 S. W. 596; Eaton v. Home Missionary Society, 264 Ill. 88, 105 N. E. 746; Matter of McDowell, 217 N. Y. 454, 112 N. E. 177; Old Colony Trust Co. v. O. M. Fisher Home (Mass.), 16 N. E. (2d) 10; Farmers Loan & Trust Co. v. Ferris, 73 N. Y. Supp. 475; 3 Scott on "Trusts," p. 1929, sec. 348.3; Teele v. Bishop of Derry, 168 Mass. 341; Gill v. Attorney General, 197 Mass. 232.] In Missouri Historical Society v. Academy of Science, 94 Mo. 459, l. c. 466, 8 S. W. 346, a "charity" is defined as follows:

"Any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity within the meaning of the authorities cited, and it is none the less a charity because not so denominated in the instrument which evidences the gift."

This definition has been approved in Buchanan v. Kennard, 234 Mo. l. c. 135, 136 S. W. 415, Crow ex rel. v. Clay County, 196 Mo. l. c. 260, 95 S. W. 369, and other cases. An art museum is a valid charitable purpose. [14 C. J. S., Title "Charities," p. 446, sec. 15; 2 Bogert on "Trusts and Trustees," p. 1170, sec. 374.]

In the instant case, the theory of the petition of plaintiffs (appellants) is that the trust attempted in the will of Mary Atkins was void from the beginning. If so, appellants as heirs of the testatrix are entitled to sue. On the other hand, if a valid charitable trust was created, the appellants have never had any title to the residue of the estate and, of course, are without authority to maintain this suit. [Dickey v. Volker, 321 Mo. l. c. 246, 11 S. W. 278, and cases

696

cited.] If this is a valid trust, it is for the benefit of.all the public, not for any group or class, and the Attorney General is the proper plaintiff to enforce it. We say this because, while the purpose of the petition is to declare the trust void *ab initio,* it also alleges that the trustees have arbitrarily commingled the trust funds with funds' of other estates. Even if the commingling of funds was in violation of the terms of the trust, which we are not called upon to decide, such act of the trustees would not destroy the trust and cause the title to revert to the heirs of the testatrix. The petition also alleges that the trustees, by their memorandum filed with the Attorney General, admitted that the commingling of funds was necessary to make the trust valid. We do not so interpret the memorandum. The admission, if any, was not that it was necessary to combine the trust funds with other funds in order to establish an art museum, but in order to establish an art museum of the *first* rank. In other words, the trustees merely stated the self-evident fact that with more money a larger museum could be established. But, even though the appellants' version of the memorandum is correct, the trustees were without authority to make an admission which would destroy the trust. Whether the trust is possible of enforcement is a question for the courts and not for the trustees.

The all-important problem which confronts us is to determine the intention of the testatrix as disclosed by her will. Appellants say she provided for the purchase of a site and the erection of a building only, without providing for works of art or for maintenance. Appellants have not convinced us that a provision for purchase of works of art is essential to the validity of the trust. We see no reason why a building devoted to general public use in exhibiting works of art, procured by donation or loan, would not constitute a valid charity. [Old Colony Trust Co. v. O. M. Fisher Home (Mass.), 16 N. E. (2d) 10.] Maintenance of the museum is necessary, but it is not necessary to provide maintenance of building or purchase of art objects out of the trust fund, if reasonable provision for them is otherwise made. In Simmons v. Fidelity National Bank & Trust Co., 64 Fed. (2d) 602, decided by the Circuit Court of Appeals, Eighth Circuit, the will of Frank F. Rozzelle was considered. The action was by his heirs to have declared invalid a trust established under his will. The will bequeathed a fund to a trustee to be used "for the upkeep, maintenance, operation, improvement or construction of the art building, erected or to be erected under the provisions of the will of Ida H. Nelson, deceased." The court considered the Rozzelle will in connection with two other wills: that of William R. Nelson and of his wife Ida H. Nelson. The will of William R. Nelson provided for the purchase and assembling of works of art; the will of Mrs. Nelson provided for the erection of a building to house such works; and the will of Mr. Rozzelle provided a fund to assist in the

construction and maintenance of the building. The court said "it is certain that the trusts contemplated by each and all of them are, in a legal sense, purely public charitable trusts."

Appellants say that the Simmons case is not authority in the instant case, because the Rozzelle will, by its express terms, is connected with the Nelson will and that the Atkins will contains no such provision. That is true, but the Atkins will does expressly authorize the trustees to cooperate with the City of Kansas City and, we think, by implication it authorizes them to cooperate with others.

Much has been said in the briefs and arguments in the instant case about the things of which we may take judicial notice. We need not wander far in that field. Without resorting to judicial notice, from the petition itself, we know that the Atkins funds have been combined with funds of the Nelson and Kirkwood estates to establish an art museum in Kansas City. Nor can we close our eyes and ears to the oft published and well known fact that the museum so established is one of the outstanding institutions of its kind in our country, made possible by just such combination of funds. Few persons have the means and the inclination to establish great memorials of this nature. It is only by combined efforts that the best results are achieved.

We concede that the Atkins will, within itself, must provide a complete and workable charity. We think it does provide a complete plan for the establishment and maintenance of an art museum, unaided by funds from other sources, but that it also authorizes the trustees to act in concert with others.

The will devises the residue to the trustees: "for the purchase of the necessary ground in Kansas City, and the erection of a building to be *maintained and used* as a Museum of Fine Arts for the use and benefit of the public, to be called the 'Atkins Museum of Fine Arts;'" then the trustees are given discretion to select and purchase the ground and erect and *furnish* the building; "and if in their judgment the remainder of my estate shall be sufficient, they may apply any surplus remaining over, after the purchase of the ground and the erection of the building, to the acquisition of such pictures, paintings, statuary or other works of art as they may deem appropriate for exhibition in said museum, or they may create an endowment fund, the annual income from which shall be devoted to the support of said museum;" then authority is given to erect the building on public ground or to convey it to the city, provided that such conveyance shall contain a condition that said museum "shall at all times be *maintained and conducted* for the use and benefit of the public, and that it shall be called the 'Atkins Museum of Fine Arts;'" then, if Kansas City shall refuse to cooperate, the trustees are given full power to manage and control the museum for the use and benefit of the public.

From the language of the will the dominant purpose of the testatrix is shown to be the erection of a building to be *furnished, maintained* and *used* as a museum of fine arts, which shall bear the Atkins name. Discretion is given as to how and by whom the museum shall be maintained, but through all the language used runs an insistence that it shall be maintained.

We hold that the will creates a valid charitable trust within the requirements of the cases cited supra. [See also, Lewis v. Brubaker, 322 Mo. 52, 14 S. W. (2d) 982.]

Appellants seem to contend that the insistence of the testatrix on the use of the Atkins name destroys the public nature of the trust and makes it merely a private memorial. The case of Old Colony Trust Co. v. O. M. Fisher Home, supra, is exact authority against such contention. [See also, 3 Scott on "Trusts," p. 2014, sec. 374.9.] We approve the ruling in that case. We are not concerned with the *motive* of the testatrix; only with the benefits which shall ensue to the public. The name of the memorial will not affect such benefits.

On the other hand, the appellants argue that the trustees, by erecting a wing of a building instead of a separate building and by failing to prominently display the Atkins name, have violated the chief purposes of the trust. If so, such conduct does not destroy the trust and is not among the issues in this case. As said before, this is a suit to declare the trust void, not to enforce it.

The conclusions herein reached make it unnecessary to pass upon the questions of laches or limitations. We hold that the will of Mary Atkins created a valid charitable trust and that the decree of the chancellor should be and is hereby affirmed. All concur.