Frederic E. VOELKER, Lucy M. Schwienher, Haille Robinson, Forrest Boecker and Anton A. Tibbe, Appellants,

v.

SAINT LOUIS MERCANTILE LIBRARY ASSOCIATION, a corporation, First National Bank in St. Louis, a corporation, Five-Twelve Locust, Inc., a corporation, and Saint Louis Union Trust Company, a corporation, Respondents.

No. 49027.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

William B. Ewald and Forrest Boecker, St. Louis, for appellants.

William Stix, St. Louis, for respondent Saint Louis Mercantile Library Association.

R. H. McRoberts and John P. MacCarthy, St. Louis, for respondents First National Bank in St. Louis, Five-Twelve Locust, Inc., and St. Louis Union Trust Company. Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

BOHLING, Commissioner.

This is a suit by Frederic E. Voelker, Lucy M. Schwienher, Haille Robinson, Forrest Boecker and Anton A. Tibbe, as members of the Saint Louis Mercantile Library Association, a corporation, referred to as "Library" or "Library Association," on behalf of themselves and all other members of said Library Association, against said Saint Louis Mercantile Library Association, the First National Bank in St. Louis, a corporation, referred to as "Bank," Five-Twelve Locust, Inc., a corporation, and Saint Louis Union Trust Company, a corporation, referred to as "Trust Company," to cancel a certain lease and amendment thereto by said Library of its ground and part of its building at Broadway and Locust in the City of St. Louis to said Bank on grounds that said lease and amendment are unreasonable, voidable, ultra vires, and a breach of trust by the officers, directors and trustees of defendant Library. The motions of the defendants to dismiss plaintiffs' amended petition were "sustained with prejudice on the grounds (1) that plaintiffs, and each of them, lack the legal capacity to sue, and (2) the petition fails to state a cause of action upon which relief can be granted." The plaintiffs have appealed. Defendants contend the court was correct on both rulings.

This suit was filed January 3, 1961. Plaintiffs alleged that the reasonable rental of the demised premises for a term ending July 14, 2019, had a value of more than three times the agreed-upon annual rental of $59,000. The judgment of dismissal was entered July 14, 1961. This court has appellate jurisdiction by reason of the amount in dispute at the time of the appeal. Consult Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504[1]; C. Bewes, Inc. v. Buster, 341 Mo. 578, 108 S.W.2d 66[1].

It will aid in an understanding of the issues to narrate certain facts within the allegations of the petition, the exhibits and the stipulations at this point.

By Laws 1846–47, p. 153, approved February 16, 1847, the General Assembly passed an act incorporating the " 'Saint Louis Mercantile Library Association,' " expressly stating "the object of which is the establishment of a library and reading room, the collection of a scientific cabinet and apparatus and of works of art and for other literary

and scientific purposes." Said act provided that said corporation "shall have perpetual succession," and continued in effect the then constitution and by-laws "until regularly altered or repealed by the association."

By Laws 1850–51, p. 74, approved February 17, 1851, the " 'Mercantile Library Hall Company of St. Louis,' " was created a body corporate and (§ 3) directed to expend its funds "in buying an adequate lot or piece of ground and erecting thereon a building sufficient and commodious for the use of the 'Saint Louis Mercantile Library Association,' which ground and building while the same or any part thereof shall be occupied and used as a public library shall not be subject to taxation." Said act (§ 4) contemplated the lease of the ground and building to the Library, with right of subletting part of the building, and (§ 5) required the conveyance of the land and building to the Library as soon as the Library had reimbursed the Hall Company for its outlays. Section 7 of the act is more appropriately quoted later.

The Library Association acquired the real estate specifically described in plaintiffs' petition.

Under the original lease (referred to in the petition as "Exhibit A") defendant Library leased to defendant Bank, for a term beginning October 1, 1948, and ending October 1, 1952, all of the described premises with the improvements thereon, a six story and basement stone and brick building, except the sixth floor of said building, reserved by the Library, and the user of certain other portions of the building appropriate to the functioning of said Library. Said lease and an amendment thereto vested the Bank with certain options for the extension of the terms of the lease. Under an amendment of said lease, dated December 18, 1956 (referred to in the petition as "Exhibit B"), said lease was extended to terminate on July 14, 2019, and the Bank obtained Library's consent to assign the lease to the Bank's wholly owned subsidiary, Five-Twelve Locust, Inc., and to the use of the lease by the latter as security for bonds or debentures not to exceed $6,-500,000, but said Bank is expressly held liable for all it obligations as lessee notwithstanding any such assignment or encumbrance. The Library, under Exhibit B, obtained an increase in the annual cash rent to $59,000 from $56,000, and more favorable provisions with respect to lessee Bank's obligations for the maintenance, repair, upkeep, et cetera, of the building, for the proper functioning of the Library, and a provision that rent should continue notwithstanding any damage to or destruction of the building.

Plaintiffs' amended petition contains allegations with respect to the facts hereinabove set forth; and in ¶ 6 thereof, among other things, alleges that defendant Library and defendant Bank entered into the lease marked Exhibit A "for a term which has been extended to terminate on July 14, 2019, that is, a term of seventy years, nine months and thirteen days. By an amendment to said lease, * * * marked 'Exhibit B,' the leasehold has been assigned to defendant Five-Twelve Locust, Inc. * * * Defendant Five-Twelve Locust, Inc., has in turn assigned the leasehold to defendant Trust Company as trustee to secure an indebtedness of $6,500,000.00, due December 1, 1981, and has surrendered various portions of said leasehold to defendant Bank and defendant Trust Company."

Paragraph "7" of said petition is quoted more appropriately hereinafter.

We quote portions of plaitniffs' petition upon which they rely in their brief in support of their contention that the lease and amendment thereto are unreasonable, voidable, ultra vires and a breach of trust.

"9. The term of said lease is unreasonably long, extending far beyond the reasonably foreseeable future, and the assets of a charitable trust ought not to be tied up for such a period of time.

"10. The rental payable under said lease, as amended, being fixed for the entire term thereof in the amount of some $59,000 per year, is unreasonably low for the premises let thereunder, which comprise some 70,000 square feet of very valuable downtown office and commercial space, conservatively worth more than three times the stated rental, and reasonably to be expected to increase in value as time goes on.

"11. The terms of said lease, as amended, are unreasonable in that there is included no 'escalator clause,' that is, no clause providing for an adjustment in the amount of rent commensurate with changing price levels and other circumstances affecting the rental value of the premises. * * *

"12. Said lease, as amended, contemplates the alteration of the entire structure let thereunder to meet the special requirements of defendants Bank and Trust Company, rendering the premises unsuitable for use by any other tenants, without any provision for defendants to pay the cost of further altering the building so as to render it suitable for general use in the event the tenancy of defendants is terminated. * * *

"13. Said lease and the amendment thereto were not approved by a lawfully constituted Board of Trustees as required by the Act of March 28, 1874, which provides in part: 'The real estate belonging to said corporation shall be managed and controlled, except as hereinafter mentioned, by a board of five trustees, members of said corporation who shall be elected at any annual meeting, or any meeting specially called for that purpose. * * * No conveyance in fee, mortgage, or deed of trust in the nature of a mortgage, nor lease for a longer period than ten years, shall be made of any real estate belonging to said corporation, unless the same shall be ordered to be made by the board of directors, three-fourths of the whole number of the members composing said board voting therefor, nor unless the same shall also be concurred in by at least four of said board of trustees, * * * and any vacancy caused by death, resignation, removal from the County of St. Louis, incapacity to serve as such trustee, shall be filled by the remaining trustees.' (Emphasis supplied.)[1] On the occasion of the purported approval of said lease, Exhibit A, and on the occasion of the purported approval of the amendment thereto, Exhibit B, there existed a vacancy on said board which had not been filled by the remaining trustees.

"14. The election by defendants to extend the term of said lease from the original stated term to the present term of seventy years, nine months and thirteen days, has never been approved by any board of trustees.

"15. The members of the boards of trustees which purported to approve said lease and said extension thereto, acted adversely to the best interests of defendant Library and its members who are the beneficiaries to whom said trustees owed a fiduciary duty. Said boards of trustees in breach of said fiduciary duty acted in furtherance of their own personal interests in approving said lease and amendment and to the disadvantage of plaintiffs and the class represented by plaintiffs, in that members of said boards had an interest in defendants Bank and Trust Company, as did members of the families by blood and marriage of certain members of said boards."

Paragraph 16 alleges that plaintiffs called the attention of the officers, directors and members of defendant Library to the infirmities of said lease and amendment at an annual meeting, and that said officers, directors and members have refused to take any action on behalf of defendant Library and its members.

Defendants say with respect to the ground plaintiffs lack the legal capacity to sue in

---

1. Emphasis supplied by pleader. Reference is to Laws 1874, pages 203, 204.

their motions to dismiss that plaintiffs are bound upon this review by the allegations and admissions in their amended petition.

■■■ The sufficiency of a petition upon a motion to dismiss must be determined by the facts alleged in the petition. Klorner v. Nunn, Mo., 318 S.W.2d 241, 246[4]; Frazier v. City of Rockport, 199 Mo.App. 80, 202 S.W. 266, 267[2]; 5 C.J.S. Appeal & Error § 1482, p. 759; 71 C.J.S. Pleading § 256, pp. 496, 497. We stated in Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, 104[9]: " 'We will not review a case upon a theory different from that upon which it was tried in the circuit court. Litigants are not permitted to blow both hot and cold in the same case, even in different court.' Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 146, 199 A.L.R.2d 950, and cases cited." See 71 C.J.S. Pleading § 59a, p. 147.

State ex rel. Buder v. Brand, 305 Mo. 321, 326, 265 S.W. 989, 990[2, 3], states in part that it is not enough that plaintiff "alleges a cause of action existing in favor of someone; he must show that it exists in favor of himself, and that it accrued to him in the capacity in which he sues." 71 C.J.S., Pleading, § 71a.

■■■ The following allegations of plaintiffs' amended petition are pertinent to this issue:

"7. By the terms of its charter, defendant Library is operated for charitable purposes, to-wit: 'The establishment of a library and reading room, the collection of a scientific cabinet and apparatus and works of art and for other literary and scientific purposes,' and its assets, including the above-described real estate, are a trust res, held for the benefit of plaintiffs and all other present and future members of defendant Library."

And, so far as material in ¶ 9, quoted in full supra: "The term of said lease is unreasonably long, * * * and the assets of a charitable trust ought not to be tied up for such a period of time."

And, the opening paragraph of plaintiffs' brief states they represent a class "consisting of members of defendant St. Louis Mercantile Library Association, a charitable trust chartered by special acts of the Missouri Legislature."

Plaintiffs' petition thus designated defendant Library Association as "a charitable trust," affirmatively alleged that it is a corporation "operated for charitable purposes," setting out the same objects and purposes of its operation as are stated in the act of its incorporation (Laws 1846–47, p. 153, supra) and alleged that its assets "are a trust res" held for the benefit of an indefinite number of beneficiaries.

Scott, Trusts, 2d ed., Vol. 4, § 370, p. 2640, states: "A trust is a valid charitable trust as one for the advancement of education although it is not connected with an educational institution. Thus trusts to establish or maintain public libraries * * * are charitable." Consult Parsons v. Childs, 345 Mo. 689, 136 S.W.2d 327[5]; Bogdanovich v. Bogdanovich, 360 Mo. 753, 230 S.W.2d 695[2]; 14 C.J.S. Charities § 15, p. 446. The purposes of defendant Library set forth in the act of its incorporation (Laws 1846–47, p. 153) and quoted in ¶ 7 of plaintiffs' petition are "charitable purposes."

■■■ Plaintiffs' petition states defendant Library's assets "are a trust res, held for the benefit of plaintiffs and all other present and future members of defendant Library." The beneficiaries of the "trust res" are indefinite. Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118, 120, 121, quotes from Ruling Case Law, Charities, § 3, so far as material: " 'a gift is a "public" charity when there is a benefit to be conferred on the public at large, *or some portion thereof*, or upon an indefinite class of persons. Even if its benefits are confined to specific classes, as decrepit seamen, labor-

ers, farmers, etc., of a particular town, it is well settled that it is a public charity. The essential elements of a public charity are that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite, unrestricted quality that gives it its public character. * * * [A]s long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public.' (Italics ours.)" See also 4 Scott, supra, § 364, p. 2614; Charities, 10 Am.Jur., § 5, nn. 4, 10; 14 C.J.S. Charities §§ 12, 37–39.

The General Assembly considered and intended defendant Library to be a public charitable corporation. See Laws 1846–47, p. 153, stating the purposes of defendant Library. Laws 1850–51, p. 74, incorporating the Mercantile Library Hall Company, provided that the funds of said Hall Company be used for acquiring ground and erecting a building thereon for defendant Library, and that (§ 3) said "ground and building while the same or any part thereof shall be occupied and used *as a public library shall not be subject to taxation*"; and (§ 7): "This act shall be a public act and shall be construed benignly and favorably in all courts and places for every beneficial purpose herein intended * * *." (Emphasis added.)

The defendant St. Louis Mercantile Library Association is, for the purposes of this suit, subject to the principles applicable to charitable trusts.

■■ "The owner of property may devote it to charitable purposes not only by transferring it to trustees in trust for such purposes, but also by transferring it to a charitable corporation." 4 Scott, supra, § 348.1, p. 2553. 2 Restatement, Trusts, 2nd, § 348f, pp. 211, 212. "Certainly many of the principles applicable to charitable trusts are applicable to charitable corporations. In both cases the Attorney General can maintain a suit to prevent a diversion of the

property to other purposes than those for which it was given; and in both cases the doctrine of cy pres is applicable." Scott, Id., nn. 2, 3; see also § 391, p. 2753; Restatement, Id., p. 212.

In Tyree v. Bingham, 100 Mo. 451, 465, 466, 13 S.W. 952, 954, 955, the court had before it a private corporation incorporated March 27, 1867, under Laws 1865–66, p. 69, for the benefit of the orphans and widows of Missouri Confederate soldiers "who perished in the late war." Contributing members sought to recover corporate funds alleged to have been misappropriated. The court held the charity to be a private one, as its beneficiaries were capable of definite ascertainment, "And it follows that, not being trustees of and having no interest in the fund, except the sentimental one that every person who contributed to it may be presumed to have, that it should be applied to the purpose for which it was contributed, they [contributing members] have no such interest in the fund, and sustain no such relation to it, as to give them a cause of action for its misappropriation." The court distinguished between the position of the plaintiffs as members of a benevolent corporation (without capital stock) organized purely for the benefit of others, and the position of stockholders of a business corporation with capital stock who have a pecuniary interest in the assets of the corporation.

Smith v. Board of Pensions of the Methodist Church, Inc., D.C., 54 F.Supp. 224, 237, was a class action by pensioners of defendant charitable corporation, challenging the legality of a charter amendment by defendant enlarging its class of beneficiaries. The court held plaintiffs had no vested interest in the trust fund: "It is evident that the creators of this trust retained control of this trust at all times. They determined who should be admitted to the pension rolls and could have removed pensioners from the rolls. Furthermore, we have been cited to no case where the management of a trust of this character was by law or im-

plication relegated to the will of those enjoying its benefits."

In Thatcher v. City of St. Louis, 343 Mo. 597, 122 S.W.2d 915[1], descendants of sisters of Bryan Mullanphy sued to terminate his testamentary trust on the ground that the purposes of the trust had long since failed. The Attorney General, made a party defendant, employed counsel to represent him, and the court dismissed plaintiffs' bill, preserving the trust. That trust was not for the public at large. See Thatcher v. Lewis, 335 Mo. 1130, 1136, 76 S.W.2d 677, 678. Counsel for the Attorney General sought to be allowed fees out of the trust fund. We denied the allowance, stating in part: "Respondents correctly state that the Attorney General was a necessary party. Lackland v. Walker, 151 Mo. 210, 52 S.W. 414; Dickey v. Volker, 321 Mo. 235, 11 S.W.2d 278, 62 A.L.R. 858"; and (122 S.W.2d 916[2]) held that the representation of the interest of the public in the enforcement of public charitable trusts was a duty directly pertaining to the office of the Attorney General. See RSMo 1959, V.A.M.S. § 27.010.

Dickey v. Volker, supra, 321 Mo. 235, 11 S.W.2d 278, 280, 281[2], involved a trust for the public generally and held that any action for the mismanagement or misuse of the trust funds "must be taken by the Attorney General as representative of the public." See the authorities reviewed in the Dickey case, supra, 11 S.W.2d at page 282 et seq.; Parsons v. Childs, 345 Mo. 689, 136 S.W.2d 327[7, 8]; Murphey v. Dalton, Mo., 314 S.W.2d 726[1, 2], 67 A.L.R.2d 1278; Scott, Trusts, 2d ed., § 391, p. 2753; Restatement, Trusts, 2nd, § 348f, p. 212, and 3 Restatement, Id., appendix, p. 570, citing cases.

Bogert, Trusts and Trustees, 1953, Vol. 2A, § 414, p. 277, states that courts usually require suits for the enforcement of charitable trusts to be "brought by the established representative of the charity, namely, the Attorney General, so that the trustees may not be vexed by frequent suits,

possibly based on an inadequate investigation, and brought by irresponsible parties."

The members of the St. Louis Mercantile Library Association have the right to participate in the charitable use, but that is not a pecuniary interest in its corporate assets.

Plaintiffs state Laws 1846–47, p. 153, made defendant Library Association a body corporate for the purpose of establishing a library and reading room, etc., and continued in effect its then constitution and by-laws until altered or repealed by the association. To escape the binding effect of their specific allegations that defendant Library Association is a "charitable trust," "operated for charitable purposes," and that its assets "are a trust res" held for the benefit of an indefinite number of beneficiaries, plaintiffs seek to distinguish this case from Dickey v. Volker, supra, by the following provisions for membership in defendant Library Association: "[F]irst, that there were, indeed, *restrictive* provisions for membership; second, that membership was under the control of the Association; third, that memberhip required the payment of a cash fee; and, fourth, that enjoyment of the Library's facilities was limited to members."

1st. The restrictive provisions for membership.

The constitution in effect in 1847 contemplated that the regular members of the Library Association should be persons engaged in mercantile pursuits; but it also provided for "honorary members" and members "not engaged in mercantile pursuits" and life membership without restriction as to occupation. Since 1925, however, and at the time of the institution of this suit, the Association was to be composed of persons engaged in mercantile pursuits and other persons, without restriction as to occupation so far as disclosed by the record presented, all being subject to approval by the "Board of Direction."

It is stated in 10 Am.Jur., Charities, § 5, nn. 4, 10: "A public charity is one in which there is a benefit to be conferred on the public at large, or some portion thereof, or upon an indefinite class of persons. * * * A charity may restrict its admissions to a class of humanity and still be public. * * * [A]nd as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public." See Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118, 120, 121, quoted supra.

Bader Realty & Inv. Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W. 2d 489, 491, states: "To be eligible for tenancy families must be living in sub-standard accommodations, and must be of low income as per regulations adopted by Housing Authority." And (217 S.W.2d loc. cit. 493[4]): "To us the conclusions seem inescapable and we rule that all the property of Housing Authority is exclusively used for purposes purely charitable * * *." In Buckley v. Monck, Mo., 187 S.W. 31[4], a testamentary trust "for the use of worn-out preachers in M. E. Church in North Mo. Conference" was considered a valid charitable trust, although "at the time of the trial there were 26 worn-out preachers in the Missouri Conference." Consult, among others, the trusts involved in Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S.W.2d 38[4–6]; Salvation Army v. Hoehn, infra.

■ 2nd. The contention that membership is under the control of the Association.

It is stated in 10 Am.Jur., Charities, § 135, p. 685: "Moreover, the facts * * * that no person has individually a right to demand admission, and that the trustees of the hospital determine who are to be received does not render it the less a public charity."

In Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826, women and girls de-

siring to live in the 13-story "Evangeline Residence" of plaintiff were required to make out and file a written application therefor and if accepted were subject to stated charges for board, lodging, etc. The court stated (188 S.W.2d page 827): "The Evangeline Residence is not open to the public. Occupants are selected on the basis of facts stated in the application." The Evangeline Residence was held used for "charitable purposes." (188 S.W.2d page 831[7].) In Buchanan v. Kennard, 234 Mo. 117, 136 S.W. 415, 37 L.R.A.,N.S., 993, the testamentary trust involved resulted in the erection of Barnes Hospital in St. Louis "for sick and injured persons, without distinction of creed, under the auspices of the Methodist Episcopal Church South of the United States, or its successors, and under such rules and regulations as said trustees and their successors shall from time to time establish and maintain," (234 Mo. 127 (1st), 136 S.W. 416(1)) and was sustained as a public charity, over the contention "that the trustees are given such power as would authorize them to select the rich as patients and exclude the poor." (234 Mo. 137–142, 136 S.W. 420–422.) Note the powers of the board of directors in Taylor v. Baldwin, 362 Mo. 1224, 247 S.W.2d 741, 746, and see Musser v. Musser, 281 Mo. 649, 221 S.W. 46, 51.

3rd. The contention that membership requires the payment of a cash fee.

American Jurisprudence, supra, § 64, p. 631, states: "The fact that such an institution [educational] requires its students to pay tuition does not change its character as a charitable institution." And, Id., § 135, p. 685: "Moreover, the facts that a corporation, established for the maintenance of a public hospital, by its rules requires of its patients payment for their board, according to their circumstances and the accommodation they receive, * * * do not render it the less a public charity." The St. Louis Housing Authority charges low rent. Bader Realty & Inv. Co. v. St. Louis Housing Authority, supra, 217 S.W.

2d loc. cit. 491. The Salvation Army charges for board and lodging in the Evangeline Residence. Salvation Army v. Hoehn, supra. Scott, Trusts, 2d ed., § 376, p. 2724, states trusts may be charitable notwithstanding provisions that the beneficiaries or some of them are to contribute to the expense of maintaining the institution. "The question is not whether the institution may receive a profit, but what disposition is to be made of the profit, if any, which may be received. If the profits are to inure to the benefit of individuals, the institution is not charitable. But if the profits, if any, are to be applied wholly to charitable purposes, the institution is charitable." See also "4th," infra.

4th. The contention that the enjoyment of the library facilities is limited to members. We consider this contention answered by holdings that it is not necessary that a charity be for the benefit of the public at large where its membership is open to an indefinite number of the public; and, so far as involved on this review, defendant Library Association, which admittedly is incorporated, is a charitable corporation. See also Scott, supra, § 370.5, p. 2647, stating: "On the other hand, a trust is none the less charitable although it is for the benefit of a private educational institution, provided that it is not a proprietary institution. The fact that the institution is not conducted by the government, and the fact that all of the members of the public are not accepted as students in the institution, does not prevent it from being a charitable institution." In Fordyce v. Woman's Christian National Library Ass'n, 79 Ark. 550, 96 S.W. 155, 7 L.R.A.,N.S., 485, any woman might become a member by paying an annual initiation fee of $2.00 and monthly dues of 25¢; persons of either sex might become honorary members for life on payment of $50.00; and any one could become a life patron for $250.00. The Library had no capital stock. There was no provision for dividends or profits. The court held it was organized for purely charitable purposes. See also Minns v. Billings, 183 Mass.

126, 130–132, 66 N.E. 593, 595, 5 L.R.A., N.S., 686.

Plaintiffs' case of Lilly v. Tobbein, 103 Mo. 477, 487(3), 15 S.W. 618, was a suit to establish a rejected will giving property "to the Catholic church at the city of Lexington," Missouri, an unincorporated association, by the trustees and other members of the church for themselves and all other members of the association. The court stated: "The statute allows 'any person interested in the probate of a will' to prosecute a suit * * * to have one proved which has been rejected by the probate court" (see RSMo 1889, § 8888); and, although the action was one at law, applied the equity rule that one or more members of a voluntary association could sue for and in behalf of all the members.

Plaintiffs' case of Harger v. Barrett, 319 Mo. 633, 5 S.W.2d 1100, 1101, 1102, in which the Attorney General was made a party defendant, was an action to quiet title under RSMo 1919, § 1970 (now RSMo 1959, § 527.150), involving a devise to "the Pleasant Ridge Baptist Church for the erection or improvement of a church house and what is not needed for the purpose to be used as may be directed by said church," plaintiffs suing for themselves and all other members of said church. The only citation on the issue here presented is Lilly v. Tobbein, supra. In the Harger case (as in the Lilly case under RSMo 1889, § 8888) any party claiming any interest in real property under said § 1970 was entitled to an adjudication of his interest, and if he have no interest the court should so adjudge and decree. Pettus v. City of St. Louis, 362 Mo. 603, 242 S.W.2d 723, 729[6], and cases cited. Scott, supra, § 391, p. 2759, nn. 22, 23, cites the Harger case under the subject "Persons having special interests," stating: "There are other situations where the matter [party having a special interest] is more doubtful. It would seem, however, that where a charitable trust is created for the benefit of a small class of persons, any member of the class can

maintain a suit on behalf of himself and the other members of the class for the enforcement of the trust. * * * When a person having a special interest in the performance of a charitable trust brings suit for the enforcement of the trust, the Attorney General is ordinarily a necessary party to the suit, since his presence is necessary for the protection of the interests of the community in the performance of the trust."

Holman v. Renaud, 141 Mo.App. 399, 125 S.W. 843, 844, 845(2), involved a testamentary gift to trustees for "erecting a Memorial Union Chapel to be used for religious purposes by the several evangelical denominations" in a specified vicinity. Plaintiffs sued on behalf of themselves and others alleging they were "resident property owners of Watkins township in Dent county in the vicinity of the proposed location of the chapel." The court pointed out that the beneficiaries of the trust were "the church organizations of that vicinity included in the designation 'evangelical denominations,'" not the property owners in that vicinity, and the precise holding was that plaintiffs' petition showed on its face plaintiffs had no right to maintain the suit. The observations of the judge in the next paragraph of that opinion, quoted in part by plaintiffs, are favorable to defendants under the definition of a public trust therein (whether precisely correct or not) in that, briefly stated, the identity of the future beneficiaries of defendant Library Association cannot be ascertained with certainty, and the judge's view, in such event, that the suit should be brought by the Attorney General.

Defendant Library Association in the case at bar is not a voluntary association, but a public charitable corporation organized by special act of the General Assembly. Plaintiffs, who are appellants, have filed no reply brief. We conclude their presentation does not establish error in the trial court's holding "that plaintiffs, and each of them, lack the legal capacity to sue." If they do not have the legal right to sue,

it logically follows that "the petition fails to state a cause of action upon which relief can be granted" to plaintiffs.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.